# Commonwealth of Massachusetts

MIDDLESEX,SS.                          TRIAL COURT OF THE COMMONWEALTH
                                       SUPERIOR COURT DEPARTMENT
                                       CIVIL DOCKET NO. 1981 CV 03198

_Petrosyan_____, PLAINTIFF(S).

v.

_Maserati North America Inc,_, DEFENDANT(S)
et. el

                               SUMMONS

THIS SUMMONS IS DIRECTED TO _Maserati North America Inc_ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Middlesex_____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**
_Superior_

1.   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
     the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
     opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
     to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
     extension of time in writing from the Court.**

2.   **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
     copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
     a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex_ Court,
          _200 Trade Center_ (address), by mail or in person, **AND**
          _MA 01801_  _Superior_
     _Woburn_
     b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
          address: _Peter Kelna, 375 Totten Pond Rd Suite 19, Waltham MA 02451_

3.   **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
     must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
     Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
     use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
     based on the same facts or transaction described in the Complaint, then you must include those claims
     in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
     lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
     Answer or in a written demand for a jury trial that you must send to the other side and file with the
     court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
     **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
     to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
     you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
     described in the rules of the Court in which the complaint was filed, available at
     www.mass.gov.courts/case-legal-res/rules of court.

A true copy Attest:
[_____] Deputy Sheriff Suffolk County

11-7-19

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1981CV03198 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Petrosyan, Stepan vs. Herb Chambers of Wayland, INC. et al | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|

| TO: Peter Kelman, Esq. Law Offices of Peter Kelman, Esq. 375 Totten Pond Rd Suite 102 Waltham, MA 02451-2010 | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                              DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 01/29/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 02/28/2020 | |
| All motions under MRCP 12, 19, and 20 | 02/28/2020 | 03/30/2020 | 04/28/2020 |
| All motions under MRCP 15 | 02/28/2020 | 03/30/2020 | 04/28/2020 |
| All discovery requests and depositions served and non-expert depositions completed | 08/26/2020 | | |
| All motions under MRCP 56 | 09/25/2020 | 10/26/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/22/2021 |
| Case shall be resolved and judgment shall issue by | | | 11/01/2021 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 10/31/2019 | ASSISTANT CLERK Maria Pantos | PHONE (781)939-2781 |
|---|---|---|

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>1981CV03198 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| | | |
|---|---|---|
| **PLAINTIFF(S):** Stepan Petrosyan | **COUNTY** Middlesex | |
| **ADDRESS:** 244 Bacon Street | | |
| Waltham, MA 02451 | **DEFENDANT(S):** Herb Chambers of Wayland, Inc., Maserati of North America, Inc. | |
| **ATTORNEY:** Peter Kelman | | |
| **ADDRESS:** 375 Totten Pond Road, Suite 102 | **ADDRESS:** 533 Boston Post Road, Wayland, MA 01778 | |
| Waltham, MA 02451 | One Chrysler Drive, Auburn Hills, MI 48326 | |
| **BBO:** 543059 | | |

**TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01, BE1 | BREACH OF CONTRACT; BUSINESS FRAUD | F | [X] YES [ ] NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  [X] YES  [ ] NO        Is this a class action under Mass. R. Civ. P. 23?  [ ] YES  [X] NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
    1. Total hospital expenses ............................................................................................... $_____
    2. Total doctor expenses ................................................................................................ $_____
    3. Total chiropractic expenses ....................................................................................... $_____
    4. Total physical therapy expenses ............................................................................... $_____
    5. Total other expenses (describe below) ...................................................................... $_____
                                                       **Subtotal (A):** $_____

B. Documented lost wages and compensation to date ............................................................ $_____
C. Documented property damages to date .............................................................................. $47,026.50
D. Reasonably anticipated future medical and hospital expenses .......................................... $_____
E. Reasonably anticipated lost wages ................................................................................... $_____
F. Other documented items of damages (describe below) ..................................................... $_____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                              **TOTAL (A-F):**$47,026.50

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

                                                       **TOTAL:** $ 47,026.50

Defendant's failure to honor terms of a warranty contract

**Signature of Attorney/ Unrepresented Plaintiff:** X _[signature]_                        **Date:** 10/31/2019

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X _[signature]_                                **Date:** 10/31/2019

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality ***

AA1 Contract Action Involving Commonwealth, Municipality, MBTA, etc.
AB1 Tortious Action Involving Commonwealth, Municipality, MBTA, etc.   (A)
AC1 Real Property Action Involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action Involving Commonwealth, Municipality, MBTA, etc.
AE1 Administrative Action Involving Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials   (F)
A02 Goods Sold and Delivered   (F)
A03 Commercial Paper   (F)
A04 Employment Contract   (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1  (F)
A08 Insurance Contract   (F)
A08 Sale or Lease of Real Estate   (F)
A12 Construction Dispute   (A)
A14 Interpleader   (F)
BA1 Governance, Conduct, Internal Affairs of Entities   (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc.   (A)
BB1 Shareholder Derivative   (A)
BB2 Securities Transactions   (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc.   (A)
BD1 Intellectual Property   (A)
BD2 Proprietary Information or Trade Secrets   (A)
BG1 Financial Institutions/Funds   (A)
BH1 Violation of Antitrust or Trade Regulation Laws   (A)
A99 Other Contract/Business Action - Specify (F)

* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract   (A)
D02 Reach and Apply   (F)
D03 Injunction   (F)
D04 Reform/ Cancel Instrument   (F)
D05 Equitable Replevin   (F)
D06 Contribution or Indemnification   (F)
D07 Imposition of a Trust   (A)
D08 Minority Shareholder's Suit   (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting   (A)
D11 Enforcement of Restrictive Covenant   (F)
D12 Dissolution of a Partnership   (F)
D13 Declaratory Judgment, G.L. c. 231A   (A)
D14 Dissolution of a Corporation   (F)
D99 Other Equity Action   (F)

**PA Civil Actions Involving Incarcerated Party †**

PA1 Contract Action Involving an Incarcerated Party   (A)
PB1 Tortious Action Involving an Incarcerated Party   (A)
PC1 Real Property Action Involving an Incarcerated Party   (F)
PD1 Equity Action Involving an Incarcerated Party   (F)
PE1 Administrative Action Involving an Incarcerated Party   (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal Injury/Property Damage   (F)
B04 Other Negligence - Personal Injury/Property Damage   (F)
B05 Products Liability   (A)
B06 Malpractice - Medical   (A)
B07 Malpractice - Other   (A)
B08 Wrongful Death - Non-medical   (A)
B15 Defamation   (A)
B19 Asbestos   (A)
B20 Personal Injury - Slip & Fall   (F)
B21 Environmental   (F)
B22 Employment Discrimination   (F)
BE1 Fraud, Business Torts, etc.   (A)
B99 Other Tortious Action   (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential   (X)
S02 Summary Process - Commercial/ Non-residential   (F)

**RP Real Property**

C01 Land Taking   (F)
C02 Zoning Appeal, G.L. c. 40A   (F)
C03 Dispute Concerning Title   (F)
C04 Foreclosure of a Mortgage   (X)
C05 Condominium Lien & Charges   (X)
C99 Other Real Property Action   (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding   (X)
E97 Prisoner Habeas Corpus   (X)
E22 Lottery Assignment, G.L. c. 10, § 28   (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A  (X)
E21 Protection from Harassment, G.L. c. 258E(X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency, G.L. c. 30A   (X)
E03 Certiorari Action, G.L. c. 249, § 4   (X)
E05 Confirmation of Arbitration Awards   (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9   (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8   (X)
E08 Appointment of a Receiver   (X)
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A   (A)
E10 Summary Process Appeal   (X)
E11 Worker's Compensation   (X)
E16 Auto Surcharge Appeal   (X)
E17 Civil Rights Act, G.L. c.12, § 11H   (A)
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b)   (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c. 265, § 56   (X)
E95 Forfeiture, G.L. c. 94C, § 47   (F)
E99 Other Administrative Action   (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B   (F)
Z02 Appeal Bond Denial   (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12   (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)   (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX:ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO. 1981CV03198

STEPAN PETROSYAN,
Plaintiff

v.

HERB CHAMBERS OF WAYLAND,
INC.,

and

MASERATI NORTH AMERICA, INC.,
Defendants

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff, Stepan Petrosyan ("Mr. Petrosyan"), brings this complaint against the Defendants for violations of multiple laws. The gravamen of Mr. Petrosyan's complaint is that Herb Chambers of Wayland, Inc. ("Herb Chambers") negligently serviced or failed to service a Maserati (the "Maserati") that Mr. Petrosyan had leased from Herb Chambers. Herb Chambers' failure to adequately service Mr. Petrosyan's Maserati led to a diagnosis that the Maserati's engine needed to be replaced. Herb Chambers estimated the cost of such a repair to be approximately

$29,000. Herb Chambers advised Mr. Petrosyan that such a repair would be covered under the new car warranty issued by the car's manufacturer, Maserati North America, Inc, "(MNA").

However, Herb Chambers mislead the plaintiff. After several exchanges between representatives of Herb Chambers and representatives of MNA, MNA declined to honor its obligations to replace the engine under its new car warranty. The reasons that MNA provided to justify its refusal to honor the warranty contract were contrived, based on incorrect facts, and had no basis in the language of the warranty contract. The spurious logic of MNA epitomized unfair acts and deceptive practices that the Massachusetts legislature and courts have declared unlawful, in several different contexts.

This situation is rendered even more egregious than the typical consumer fraud scenario because of the fact that this deceptive scheme required the coordinated efforts of the two Defendants. The facts will show that Herb Chambers conspired with MNA to develop a story to: (a) camouflage the negligence of Herb Chambers in failing to adequately service the Maserati; and, to (b) conceal from Mr. Petrosyan the contractual liability of MNA under its warranty to pay for the consequences of Herb Chamber's negligence. Because of the conspiratorial activities of Herb Chambers and MNA, the Defendants should be held accountable and punished for their violations of statutory provisions in the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

In addition to violations of RICO, the Defendants have violated numerous state consumer protection laws, including but not limited to Mass. Gen. Laws Ch. 93A (Regulation of Business Practices for Consumer Protection); Mass. Gen. Laws Ch. 93B (Regulation of Business Practices Relative to Motor Vehicle Dealers and Manufacturers); and Mass. Gen. Laws Ch. 176D (Unfair Acts and Deceptive Practices in the Business of Insurance).

All of these statutes entitle the plaintiff to the recovery of treble damages, attorneys fees and other damages as this court sees fit to impose.

## I. PARTIES

1.    Plaintiff, Stepan Petrosyan, ("Mr. Petrosyan") is an individual residing at 244 Bacon Street, Waltham, County of Middlesex, Massachusetts, 02451.

2.    Defendant, Herb Chambers of Wayland, Inc. ("Herb Chambers"), is a domestic profit corporation with a principal place of business located at 533 Boston Post Road, Wayland, County of Middlesex, Massachusetts, 01778.

3.    Defendant, Maserati North America, Inc. ("MNA"), is a corporation incorporated under the jurisdiction of Delaware with a principal place of business located at One Chrysler Drive, Auburn Hills, Michigan 48326.

## II. JURISDICTION

4.    Subject matter jurisdiction is conferred upon this Court pursuant to the several statutes the Plaintiff alleges the defendants to have violated, including but not limited to Mass. Gen. Law Ch. 93A, Section 9 (1); Mass. Gen. Law Ch. 93B, Section 2; Mass. Gen. Law Ch. 93A, Section 9 (1) as applied to claims brought pursuant to Mass. Gen. Law Ch. 176D Section 3, clause 9; and pursuant to the principles of concurrent jurisdiction as applied to 18 U.S.C. Section 1965.

5.    Personal jurisdiction is conferred upon this Court pursuant to the Massachusetts Long Arm Statute, Mass. Gen. Laws Ch. 223A, §3(a), as a result of the Defendant MNA's transaction of business in Massachusetts, which is causally related to the causes of action asserted herein.

## III.    COMMON FACTUAL ALLEGATIONS

6.    Mr. Petrosyan is currently employed by Star Market as the Store Director of its store located in Allston, Massachusetts. As his title suggests, Mr. Petrosyan is the chief executive in charge of running this store.  He is responsible for overseeing all aspects of the operations of the store, including supervising

approximately 140 employees who work at the store. Mr. Petrosyan has worked for Star Market for 17 years. He started as a clerk who gathered shopping carts and stocked shelves.

7.      In addition to his full-time job, Mr. Petrosyan also attends the McCallum Graduate School of Business at Bentley University where he is enrolled in the Master of Business Administration degree program.

8.      Herb Chambers is a car dealership located in Wayland, Massachusetts that specializes in selling foreign luxury automobiles to the public.

9.      MNA is a manufacturer of luxury automobiles.

A.      **The Lease is Executed.**

10.     On or about November 12, 2016, Mr. Petrosyan leased a new Maserati automobile from Herb Chambers. The vehicle ID Number is: ZAM57RTA0H123128967 (the "Maserati"). On this date Petrosyan executed a Closed-End Motor Vehicle Lease Agreement with Herb Chambers for the Maserati (the "Lease"). *See* **Exhibit 1**, a copy of the first page of the Lease.

11.     On the same date, Herb Chambers directed Petrosyan to execute a Motor Vehicle Purchase Contract for the Maserati (the "Purchase Contract"). *See* **Exhibit 2**. It is not clear why Herb Chambers directed Mr. Petrosyan to execute the Purchase Contract when Mr. Petrosyan did not purchase the Maserati. Moreover, the Purchase Contract lacks the basic information one would expect to find in such an agreement including the purchase price of the Maserati. While the Herb Chambers' reason for directing Petrosyan to sign such an agreement is unclear, language in this Purchase Contract will become relevant later on when analyzing the terms of the MNA Warranty that govern this transaction.

12.     At all times relevant hereto, Mr. Petrosyan has complied with all terms of the Lease. In fact, to this day, Mr. Petrosyan is current with respect to all payments he is obligated to make under the Lease, even though Mr. Petrosyan has not driven the car since March of 2019.

**B.      Mr. Petrosyan Complies with the Maintenance Requirements of the Lease.**

13.     Section 24 of the Lease requires Mr. Petrosyan to maintain and service the Maserati as recommended in the owner's manual. Section 24 of the Lease states in part:

> *You will maintain, service and repair the Vehicle as recommended in the owner's manual and as needed to keep the Vehicle in good*

*operating condition and free of physical damage. ... You will
maintain records of all repairs and maintenance.*

14.    During his time as a lessee, Mr. Petrosyan used the Maserati almost
exclusively for local transportation.  He drove the car to and from his job at Star
Market which is 8 miles from his home in Waltham.  In addition, Mr. Petrosyan
typically travelled to Bentley University, a mere 1.5 miles from Mr. Petrosyan's
home. As a consequence, Mr. Petrosyan drove the Maserati on average fewer than
1,000 miles a month.

15.    When Herb Chambers delivered the Maserati to Mr. Petrosyan, the Maserati
came with a booklet entitled "Maserati Ghibli – Quick Reference Guide" (the
"Reference Guide").  No other owner's manual was included.

16.    **Exhibit 3** contains a copy of the cover page to the Reference Guide and a
copy of page 91 of the Reference Guide. The section entitled "Scheduled
Maintenance" starts on page 91.  This section contains a chart entitled "Scheduled
Maintenance Plan."  Row 3 of the chart states that the engine oil and filter should
be replaced every 12,500 miles. *See* **Exhibit 3**, page 91.

17.    On December 12, 2017, Mr. Petrosyan had the oil changed in the Maserati,
All manufacturer's recommendations were followed. *See* **Exhibit 4,** a copy of the

maintenance receipt that the mechanic, American Auto Collision, gave Mr. Petrosyan when it performed these services. At that time, the Maserati had 11,205 miles on it. This was fewer miles than the 12,500 mile interval recommended by the Reference Guide. Mr. Petrosyan had the oil changed at American Auto Collision because it was located less than a mile from his Star Market.

18.     On January 2, 2019, Mr. Petrosyan had the Maserati's oil changed a second time. All manufacturer's recommendations were followed. *See* **Exhibit 5**, a copy of the maintenance receipt that the mechanic, American Auto Collision, gave Mr. Petrosyan when it performed these services. At that time, the Maserati had 22,572 miles on it, or 11,367 miles since Mr. Petrosyan's first oil change. Again this was well within the recommended 12,500 mile interval set forth in the Reference Guide.

19.     No other service was performed on the Maserati until Mr. Petrosyan contacted Herb Chambers in February of 2019 to schedule some routine recall work about which he had been notified by MNA.

**C.     Mr. Petrosyan Contacts Herb Chambers.**

20.     On February 25, 2019, Mr. Petrosyan contacted Herb Chambers for two reasons. First, Mr. Petrosyan called to schedule a service appointment for the recall work that MNA had suggested for the car.

21.    Second, Mr. Petrosyan had noticed in the two days prior to February 25, that the check engine light had been coming on and going off, flickering so to speak. Mr. Petrosyan told a Herb Chambers service representative about this and inquired if this condition required an immediate service appointment.

22.    The Herb Chambers service representative told Mr. Petrosyan that as long as the check engine light did not stay on, there was no urgency for the Maserati to be serviced. The service representative confirmed with Mr. Petrosyan that the check engine light did not remain on. The Herb Chambers service representative said that the condition causing the check engine light to go on and off would be examined when Mr. Petrosyan came in for the recall work.

23.    As a consequence, the Herb Chambers service representative scheduled a service appointment for March 7 to perform the recall work and to examine the engine.

24.    Three days later, Mr. Petrosyan noticed a clunking sound coming from the car's engine. Mr. Petrosyan was concerned about the sound. He immediately called Herb Chambers again and discussed the presence of the sound with a representative from the service department. The service representative told Mr.

Petrosyan that this condition was not uncommon in Maserati vehicles and that, once
again, there was no need for the car to be serviced immediately. The service
representative reassured Mr. Petrosyan that the engine would be examined when
Mr. Petrosyan brought his car in for the service appointment on March 7.

25.     Mr. Petrosyan continued to drive the Maserati per his ordinary routines
between the time he spoke with Herb Chambers on February 28 and when he
brought the car in on March 7. That is to say that Mr. Petrosyan continued to drive
his car to work and to school and took no other trips out of the ordinary.

**D.      Mr. Petrosyan Brings the Maserati to Herb Chambers for Service.**
26.     On March 7, 2019, as scheduled, Mr. Petrosyan brought the Maserati to
Herb Chambers for his service appointment.

27.     Mr. Petrosyan was given a "loaner" vehicle and left the Maserati with Herb
Chambers.

28.     Five days elapsed before Mr. Petrosyan next heard from Herb Chambers.
On March 11, Mr. Petrosyan received a call from the service manager. The service
manager told Mr. Petrosyan that the Maserati needed a new engine.

29.     Mr. Petrosyan asked the service manager what was wrong with the engine. Mr. Petrosyan did not receive an answer to that question. To this day, Mr. Petrosyan does not know the reason Herb Chambers and Maserati believe his car needs a new engine.

30.     Instead of answering Mr. Petrosyan's question, the Herb Chambers service manager told Mr. Petrosyan not to worry about the fact that a new engine was needed. The manager told Mr. Petrosyan that a replacement engine would be covered by the MNA new car warranty. Then the following events ensued.

E.     **The Dialogue among Mr. Petrosyan, Herb Chambers and MNA.**

31.     Herb Chambers told Mr. Petrosyan that it would represent him and contact MNA regarding Mr. Petrosyan's warranty claim. In fact, Herb Chambers told Mr. Petrosyan that its service manager, Michelle Petrarca, would be his advocate when dealing with MNA. *See* **Exhibit 6**, an email from Ms. Petrarca to Mr. Petrosyan, dated March 29, 2019.

32.     In her March 29, 2019 email to Mr. Petrosyan, Ms. Petrarca wrote the following:

*We are here to advocate for you. ... I am an advocate for you and I think that maybe you might have been thinking I was not on your side, I do need to give you all of the information and don't want you to get caught off guard.*

33.     Mr. Petrosyan complied with Ms. Petrarca's request that she act as his advocate.  From that moment on, Mr. Petrosyan had no direct contact with MNA and all communications were conducted by Ms. Petrarca on behalf of Mr. Petrosyan.

34.     Shortly thereafter, Ms. Petrarca informed Mr. Petrosyan that MNA wanted to see Mr. Petrosyan's maintenance records.   Mr. Petrosyan delivered to Ms. Petrarca the records attached as **Exhibits 4 & 5**.

35.     After receiving these maintenance records, Ms. Petrarca contacted Mr. Petrosyan again.  She told him that MNA did not accept those maintenance records as proof of his maintenance of the Maserati.  She told him that MNA stated that those maintenance records did not comply with the warranty requirements for proof of service.  She told Mr. Petrosyan that MNA required maintenance receipts that were typed in order to comply with the warranty requirements.

12

36.     Mr. Petrosyan went back to American Auto Collision, which had done the oil changes, and asked for typed maintenance receipts. American Auto Collision complied and gave Mr. Petrosyan two typed maintenance receipts, one for the oil change done on December 12, 2017 (**Exhibit 7**) and one for the oil change done on January 2, 2019 (**Exhibit 8**). These maintenance receipts are referred to herein as the "Maintenance Receipts."

37.     Mr. Petrosyan then delivered these two typed Maintenance Receipts to Ms. Petrarca.

38.     On April 17, 2019, more than five weeks after Mr. Petrosyan brought his Maserati to Herb Chambers, Ms. Petrarca informed Mr. Petrosyan that MNA would not cover the cost of the repair to replace the engine in his Maserati.

39.     On April 17, 2019, Mr. Petrosyan returned the Herb Chambers loaner car he had been driving. Further he had his Maserati towed to his home in Waltham where it has remained, sitting in Mr. Petrosyan's driveway, undriven since that date.

40.     On April 22, 2019, Ms. Petrarca emailed Mr. Petrosyan and informed Mr. Petrosyan that the cost to replace the Maserati engine would be $28,703.09. *See* **Exhibit 9**.

**F.**   **The April Invoice.**

41.    When Mr. Petrosyan retrieved his Maserati, Herb Chambers gave him an "invoice", invoice number 31179, with an invoice date of April 17, 2019.  At the top of the invoice a legend reads, "Promised: 13:36 07 March 19."  A copy of invoice 31179 is attached as **Exhibit 10** (the "April Invoice").

42.    The April Invoice sets forth the reasons that MNA declined to honor its warranty obligation to pay for the cost of a replacement engine in Mr. Petrosyan's Maserati.

43.    Page 2 of the April Invoice contains an entry with the following heading, "CLIENT STATES CHECK ENGINE LIGHT IS ON 57 CHECK ENGINE LIGHT ON KNOCKING SOUND COMING FROM ENGINE."

44.    The entry below the heading goes on to state in part:

*Engine knocking and low oil pressure light on. Checked oil level, oil is full. Scanned for codes, found oil pressure low code. Vehicle was driven to dealer even with the low oil pressure warning light on. ... There is a clear knocking noise coming from the oil sump area. Oil does not look to have and [sic] fuel or metal in it. ... Maserati requested invoices from owner for services done. Attached invoices that were provided as well as receipts that were provided to service. Warranty response from Maserati as follows, 'Attached maintenance receipts are not valid per Maserati requirements. No invoice number on them, no customer signature, and*

14

*no indication that they were paid. The invoice also states that the customer provided the oil and the OEM filter.' Advised client no warranty repairs available at this time.*

**G.    The Maserati Warranty.**

45.    As mentioned in Paragraph 11, when Mr. Petrosyan executed his Lease for

the Maserati, Herb Chambers also asked Mr. Petrosyan to execute a Purchase

Contract. *See* **Exhibit 2**. In the middle of Purchase Contract, enclosed in a small

box, is the following entry:

> ### *WARRANTY INFORMATION*
> *This vehicle carries an express warranty. Purchaser may obtain a copy of such warranty from the dealer upon request at time of order and will receive the warranty at time of delivery.*

46.    When Mr. Petrosyan took delivery of the Maserati from Herb Chambers, a

booklet entitled "Maserati Ghibli Warranty Card" was located in the glove box of

the Maserati. *See* **Exhibit 11,** (the "Warranty Card"), which is a copy of the cover

of the booklet, and excerpts from certain other pages. No other document was

delivered with the Maserati containing warranty information.

47.    Page 9 of the Warranty Card is entitled **Limited Warranty**. It sets forth

the conditions precedent that a purchaser of a Maserati automobile must follow in

order to obtain the benefit of the Limited Warranty. It is included in **Exhibit 11**.

48.     Page 12 of the Warranty Card is entitled **Exclusions from Warranty**. Pages 12 and 13 are included in **Exhibit 11**. Nowhere in this section does MNA set forth an affirmative requirement for a purchaser of a Maserati to provide maintenance records of any particular quality, or bearing any particular characteristics, in order to make a warranty claim.

49.     Page 24 of the Warranty Card is entitled **Owner Obligations**. It is included in **Exhibit 11**. It contains the following paragraph:

> *It is also your responsibility to keep a copy of all repair records and receipts as well as records of all maintenance services performed, including engine and oil filter changes. Records of these services may be requested for substantiation of proper maintenance, and should be transferred to each subsequent owner.*

50.     The section on **Owner Obligations** says nothing further regarding any pre-requisites needed to verify the adequacy of maintenance records.

## H.     The Alleged Inadequacy of Mr. Petrosyan's Maintenance Receipts.

51.     On April 9, Ms. Petrarca emailed Mr. Petrosyan with the news that MNA had rejected the adequacy of the Maintenance Receipts and therefore refused to cover the costs of the engine replacement under the MNA Warranty. *See* **Exhibit 12**.

52.     The April Invoice restated the language used by Ms. Petrarca *ver batim*.  As

set forth above in Paragraph 41, the April Invoice stated in part:

> *Warranty response from Maserati as follows, 'Attached maintenance receipts are not valid per Maserati requirements. No invoice number on them, no customer signature, and no indication that they were paid.  The invoice also states that the customer provided the oil and the OEM filter.'  Advised client no warranty repairs available at this time.*

53.     The reasons that Herb Chambers, as the agent for MNA, conveyed to Mr.

Petrosyan for the inadequacy of Mr. Petrosyan's Maintenance Receipts were false:

intentional misstatements of fact and of the terms of the warranty contract, as

explained below.

54.     **First**, as set forth above in paragraphs 45 – 50, the MNA Warranty imposed

none of the requirements to prove the legitimacy of maintenance records that MNA

cited as reasons for disallowing those records.  MNA fabricated these requirements

in an effort to deprive Mr. Petrosyan of the benefits to which he was entitled.

55.     **Second,** each of the Maintenance Receipts had an invoice number on them.

In the upper right hand corner of each Maintenance Receipt is a field with the

legend "Workfile ID."  This is the invoice number.

56.     **Third,** each Maintenance Receipt is stamped "PAID" on page 2.

57.    **Fourth,** while the Maintenance Receipts were not signed by Mr. Petrosyan, American Auto Collision did not require Mr. Petrosyan to have signed such a document. It is not a custom in the industry (or for that matter in any other similar consumer transaction) for a customer to sign a receipt indicating that the customer has paid service provider. It may be an industry custom to require a customer to sign an estimate authorizing a mechanic to perform services, but not to indicate that an invoice has been paid.

58.    **Fifth,** it is true that Mr. Petrosyan supplied American Auto Collision with the appropriate oil and filter for the oil change. Each Maintenance Receipt recites the OEM part number for all the component parts that Mr. Petrosyan supplied, and all such part numbers correspond to the appropriate Maserati part number.

59.    For all of the above reasons, it was unlawful for MNA to refuse to honor the terms of the Warranty based on the alleged inadequacy of the Maintenance Receipts Mr. Petrosyan provided Herb Chambers.

## I.    The Aftermath.

60.    Since retrieving the Maserati from Herb Chambers on April 17, 2019, Mr. Petrosyan has kept the car in the driveway of his parent's home in Waltham. *See*

**Exhibit 13**, a picture of the Maserati in his parent's driveway.  He has not driven it since retrieving it from Herb Chambers.

61.     Mr. Petrosyan has continued to make his monthly lease payments and has fulfilled all other financial obligations under the lease.  *See* **Exhibit 14**.  To date, Mr. Petrosyan has spent $8,434 for on-going expenses to maintain his lease and his financial obligations as a lessee.

62.     Mr. Petrosyan's lease expires February 12, 2020.  At the termination of the lease, Mr. Petrosyan has an option to purchase the Maserati for $38,592.50.  The estimated value of a 2017 Maserati Ghibli with no functioning engine is $0.00.

63.     Mr. Petrosyan attempted to settle this dispute amicably with the Defendants during the summer of 2019.  Mr.  Petrosyan engaged counsel who sent to the Defendant's a letter dated July 10, 2019, in which counsel presented Mr. Petrosyan's version of the facts and requested that the Defendant's respond within 30 days in an effort to resolve the dispute (the "July 10 Letter").  *See* **Exhibit 15**, letter from Peter Kelman, Esq. to Herb Chambers and MNA.

64.     MNA did not respond to the July 10 Letter.

65.     Counsel to Herb Chambers replied by letter on August 8, 2019. *See* **Exhibit 16**. In its letter, Herb Chambers admitted no liability and merely pointed an accusatory finger at MNA. Herb Chambers failed to address any of the claims of negligence and unfair acts and deceptive practices ascribed to it that were detailed in the July 10 Letter. Further, Herb Chambers made no offer to settle Mr. Petrosyan's claim. No substantive discussions took place between counsel for Herb Chambers and Mr. Petrosyan after August 8.

## COUNT I – NEGLIGENCE v. HERB CHAMBERS

66.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 65 above, as if specifically set forth herein.

67.     At all times relevant hereto, Defendant, Herb Chambers, provided automotive service to Mr. Petrosyan's Maserati relative to the events described herein.

68.     Herb Chambers owed a duty of care to Mr. Petrosyan to service his Maserati in a professional, workmanlike manner.

69.     Herb Chambers failed to perform professional and workmanlike services on Mr. Petrosyan's Maserati, as more fully described herein, and thereby breached its duty of care owed to Mr. Petrosyan.

70.     As a direct and proximate result of Herb Chambers' breach of its duty of care owed to Mr. Petrosyan, Mr. Petrosyan has suffered the harm more fully described herein.

## COUNT II – BREACH OF CONTRACT v. MNA

71.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 70 above, as if specifically set forth herein.

72.     At all times relevant hereto, Defendant, MNA, had a contract to provide certain obligations to Mr. Petrosyan pursuant to the terms of the MNA Warranty. Mr. Petrosyan provided good and valuable consideration in order to obtain the benefit of the MNA Warranty as the cost of the MNA Warranty was bundled into the price of the Maserati.

73.     MNA breached the terms of its Warrant contract with Mr. Petrosyan when MNA failed to honor its obligation to pay for the cost of a replacement engine in the Maserati.

74.     MNA's breach of its contractual obligations have caused harm to Mr. Petrosyan in the manner described herein.


## COUNT III – UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF MASS. GEN. LAWS CH. 93B v. HERB CHAMBERS

75.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 74 above, as if specifically set forth herein.


76.     At all times relevant hereto, Defendant, Herb Chambers, was a distributor of motor vehicles, engaged in the sale of motor vehicles within the Commonwealth of Massachusetts as such terms are defined by Mass. Gen. Laws Ch. 93B, Sec 1.

77.     Defendant, Herb Chambers, engaged in actions, described in more particular detail elsewhere herein, in bad faith which were unconscionable and which caused damage to Mr. Petrosyan.


## COUNT IV – UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF MASS. GEN. LAWS CH. 93B v. MNA

78.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 77 above, as if specifically set forth herein.

79.    At all times relevant hereto, Defendant, MNA, was a manufacturer of motor vehicles, engaged in the sale of motor vehicles within the Commonwealth of Massachusetts as such terms are defined by Mass. Gen. Laws Ch. 93B, Sec 1.

80.    Defendant, MNA, engaged in actions, described in more particular detail elsewhere herein, that were arbitrary, in bad faith and unconscionable and which caused damage to Mr. Petrosyan.

## COUNT V – UNFAIR AND DECEPTIVE ACTS AND PRACTICES IN THE BUSINESS OF INSURANCE IN VIOLATION OF MASS. GEN. LAWS CH. 176D v. MNA

81.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 80 above, as if specifically set forth herein.

82.    At all times relevant hereto, Defendant, MNA, was a person engaged in the business of the sale of insurance contracts within the Commonwealth of Massachusetts as such terms are defined by Mass. Gen. Laws Ch. 176D, Sec 1.

83.    The MNA Warranty is a contract of insurance as defined by Mass. Gen. Laws Ch. 176D, Sec. 1.

23

84.     Defendant, MNA, engaged in unfair claim settlement practices by the following acts, including but not limited to: (a) misrepresenting the pertinent facts of insurance policy provisions relating to coverage issues; (b) failing to adopt reasonable standards for the prompt investigation of a claim; (c) refusing to pay a claim without conducting a reasonable investigation; and (d) failing to settle a claim promptly where liability has become reasonably clear.

## COUNT VI – UNFAIR AND DECEPTIVE PRACTICES VIOLATION OF MASS. GEN. LAWS CH. 93A v. MNA AND HERB CHAMBERS

85.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in Paragraphs 1 through 84 above, as if specifically set forth herein.

86.     At all material times, Plaintiff and Defendants were engaged in "trade or commerce" as those terms are defined by Massachusetts General Laws, Chapter 93A, §§2 and 9.

87.     Defendants have engaged in unfair acts and deceptive business practices including but not limited to the follow: (a) failing to adequately service Mr. Petrosyan's Maserati; (b) failing to honestly disclose to Mr. Petrosyan the underlying cause of his car's engine problems; and (c) misrepresenting the terms of the warranty covering repairs to Mr. Petrosyan's car.

88.    The acts and practices of Defendants described herein constitute unfair and

deceptive acts and practices as prohibited by Mass. Gen. Laws, Chapter 93A.


89.    The use of said unfair and deceptive acts and practices by Defendants have

been willful, knowing, and intentional.


90.    Plaintiff's Counsel sent the Defendants a demand letter pursuant to the

requirements of Mass. Gen. Laws, Chapter 93A, Sec.9. *See* **Exhibit 15**.


91.    Defendants have failed to tender the relief requested or any other form of

relief.


92.    The Defendants' actions have caused Mr. Petrosyan to sustain the damages

described more fully herein.


## COUNT VII – VIOLATIONS OF THE RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT, U.S.C. §1962(c) v. MNA AND HERB CHAMBERS

93.    Plaintiff repeats, realleges, and incorporates by reference the allegations

contained in Paragraphs 1 through 92 above, as if specifically set forth herein.

94.     Each of the Defendants, Herb Chambers and MNA, is an enterprise engaged in and whose activities affect interstate commerce.  The Defendants are employed by or associated with the enterprises described herein.

95.     The Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Mr. Petrosyan by conspiring to concoct a story whereby neither Defendant would be liable to Mr. Petrosyan for the damage that Mr. Petrosyan's Maserati suffered as a result of the acts of the Defendants.

96.     Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of conspiring to create a story whereby neither Defendant would be accountable to Mr. Petrosyan for the damage to his automobile engine.

97.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

98.     The Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c) and (d).

99.     As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c) and (d), Mr. Petrosyan has been injured by the diminution in value to his automobile, and other forms of damage as more particularly describe herein.

**WHEREFORE**, the Plaintiff, Stepan Petrosyan, hereby demands that judgment be entered against the Defendants, Herb Chambers of Wayland, Inc. and  Maserati North America, Inc., as follows:

A.      In an amount of not less than thirty-eight thousand, five hundred, ninety-two dollars and fifty cents, U. S. ($38,592.50), for loss of market value to the Maserati;

B.      In an amount of not less than eight thousand, four hundred and thirty four dollars, U. S. ($8,434.00), for ongoing expenses;

C.      For treble the amount of Plaintiff's actual damages as a result of the Defendants' willful and knowing violations of Mass. Gen. Laws Ch. 93A; Mass. Gen. Laws Ch. 93B; Mass. Gen. Laws Ch. 176D; and 18 U.S.C. § 1964 (c);

D.      For Plaintiff's attorney's fees,

E.      For court costs;

F.     For punitive damages as this Court deems just and appropriate;

G.     For interest as provided by law; and

H.     For such other and further relief as this Court deems just and appropriate.


Stepan Petrosyan,
Plaintiff

By his attorney,

Dated: 10/31/2019

PETER KELMAN, ESQ.
BBO #543059
375 Totten Pond Road, Suite 102
Waltham, MA 02451-2010
(781) 684-8448


**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS**

**SET FORTH HEREIN**

Exhibit 1

# CLOSED-END MOTOR VEHICLE LEASE AGREEMENT
## Consumer Paper

DEAL# 6721
STK # M421
CUST# 6515

☐ Monthly Payment Lease          ☐ Single Payment Lease

**1. PARTIES:**                                                         Lease Date: 11/12/20!

| Lessor - Dealer Name | Address  533 BOSTON POST ROAD |
|---|---|
| HERB CHAMBERS OF WAYLAND, INC DBA HERB CHAMBE | WAYLAND, MA  01778 |
| Lessee - Name | Address |
| STEPAN PETROSYAN | ▮▮51 |
| Lessee - Name | Address |
| N/A | N/A |

Each Lessee signing this Lease ("you" or "your") agrees to lease from the Lessor named above the vehicle described in Section 2 (the "Vehicle") on the ter and conditions in this Lease Agreement ("Lease"). Lessor intends to assign its rights and interest under this Lease to JPMorgan Chase Bank, N. A. ("Chas As used in this Lease, the terms "us," "our" and "we" refer to the Lessor and, after assignment, to Chase or its successors and assigns.

**2. DESCRIPTION OF LEASED VEHICLE:**

| MODEL YEAR | MAKE | MODEL | BODY STYLE | COLOR | VEHICLE ID NO. | ODOMETER |
|---|---|---|---|---|---|---|
| 2017 | MASERATI | GHIBLI S | SEDAN | BLACK | ZAM57RTA0H1218967 | |

☐ If checked, the primary use of the Vehicle is business or commercial; otherwise, it is personal, family or household use.

**3. LEASE TERM.** The Lease Term is _____ 39 _____ months, beginning on the Lease Date (above) and ending on __02/12/2020__ (the "Maturity Dat

**4. DESCRIPTION OF TRADE-IN (if applicable)**

| MODEL YEAR | MAKE | MODEL | GROSS ALLOWANCE | AMOUNT OWED | NET TRADE-IN |
|---|---|---|---|---|---|
| N/A | N/A | N/A | $ N/A | $ N/A | $ N/A |

An "e" in this Lease indicates an estimate.

### Federal Consumer Leasing Act Disclosures

**5. Amount Due at Lease Signing or Delivery**

(Itemized below)*

$ _____

**6. Lease Payments:**

(a) Monthly Payment Lease: Your first Monthly Payment of $ 601.24 is due on 11/12/2016 followed by 38 payments of $ 601.24 due each following month. The total of your Monthly Payments is $ 23448.36

(b) Single Payment Lease: Your Advance Single Payment of $ N/A is due on N/A

**7. Other Charges**
(not part of your Monthly Payment):

Turn-In Fee (if you do not purchase the Vehicle from us): $ 300.00

Total: $ 300.00

**8. Total of Payments**
(The amount you w have paid by the er of the Lease):

$ _____

**Itemization of Amount Due at Lease Signing or Delivery**

**9. Amount Due at Lease Signing or Delivery**

| | | |
|---|---|---|
| (a) Capitalized Cost Reduction | $ | 5000.00 |
| (b) First Monthly Payment | + $ | 601.24 |
| (c) Advance Single Payment | + $ | N/A |
| (d) Refundable security deposit | + $ | N/A |
| (e) Initial title fees | + $ | 80.00 |
| (f) Initial registration fees | + $ | 85.00 |
| (g) Sales or use tax | + $ | 43.9▮ |
| (h) Acquisition Fee | + $ | N/A |
| (i) Dealer document processing fee | + $ | 349.00 |
| (j) Prior credit or lease balance | + $ | N/A |
| (k) N/A | + $ | N/A |
| (l) N/A | + $ | N/A |
| (m) N/A | + $ | N/A |
| (n) N/A | + $ | N/A |
| (o) N/A | + $ | N/A |
| (p) CAP RED TAX | + $ | 312.50 |
| (q) N/A | + $ | N/A |
| (r) N/A | + $ | N/A |
| (s) N/A | + $ | N/A |
| (t) N/A | + $ | N/A |
| (u) N/A | + $ | N/A |
| (v) Total | | $ 6471.6▮ |

**10. How the Amount Due at Lease Signing or Delivery will be paid:**

| | | |
|---|---|---|
| (a) Net trade-in allowance | $ | ▮ |
| (b) Amount to be paid in cash | + $ | 6471 |
| (c) Rebates and noncash credits: | | |
| (1) Manufacturer Rebate(s) | + $ | ▮ |
| (2) N/A | + $ | 0 |
| (3) N/A | + $ | 0.0▮ |
| (4) N/A | + $ | 0.0▮ |
| (d) Total | = $ | 6471 ▮0 |

**11. Your Lease payment is determined as shown below.**

(a) Gross capitalized cost. The agreed upon value of the Vehicle ($ 62475.67 ) and any items you pay for over the Lease Term

# PURCHASE CONTRACT

**BENTLEY BOSTON**
533 BOSTON POST ROAD   WAYLAND, MA 01778
508-650-0020   FAX: 508-358-3576
www.herbchambers.com

DEAL# 6721

CUST# 65

| DATE 12 NOV 16 | ORDER NO. | STOCK NO. M421 | SALESPERSON OLDMIXON, WILLIAM |

PURCHASERS NAME(S): **STEPAN PETROSYAN**

ENTER MY ORDER FOR (QUANTITY) **ONE**   NEW ☒   USED ☐

| Year 17 | Make MASERATI | Model Name GHIBLI S | Body Style/Type SEDAN | Model No. | Transmission Automatic | Cyl. 6 | Pass. 5 |

Vehicle Identification No. **ZAM57RTA0H1218967**

Color 1st **BLACK**   Interior 1st **SABBIA**   Odometer 24.

## WARRANTY INFORMATION
This vehicle carries an express warranty. Purchaser may obtain a copy of such warranty from the dealer upon request at time of order and will receive the warranty at time of delivery.

Registration Fee $ 50.00
Title Fee $ 75.00
Mass. Sales Tax $ N/A

LIENHOLDER JP MORGAN CHASE BA
Address PO BOX 901098
City/State/Zip FORT WORTH TX 76101
INSURANCE CO. METROPOLITAN PROPE
Agent/Branch METLIFE
Address/City DAYTON OH 45448-0002

TOTAL MONTHLY PAYMENT 601
AMOUNT DUE AT START 6471
ANNUAL EXPECTED MILES 10

**Dealer Installed Accessories**
OTHER FEES: (SEE LINE 9)
MA STATE INSPECTION 35
STATE REG 125

| | | $ | |
| 1. Total Price | | $ | |
| 2. Discount | | $ | N/A |
| 3. Trade-In Allowance | | $ | |
| 4. Rebate(s) | | $ | N/A |
| 5. Trade Difference | | $ | |
| 6. Documentary Preparation | | $ | |
| 7. Title Preparation | | $ | 345 |
| 8. Mass. Sales Tax | | $ | |
| 9. (SEE ABOVE) | | $ | 160 |
| 10. TOTAL CONTRACT PRICE | | $ | |
| 11. Balance Due on Trade-In | | $ | |
| 12. Subtotal | | $ | N/A |
| 13. Deposit | | $ | |
| 14. Amount to be Financed | | | |
| 15. Cash Due on Delivery | | | |
| 16. TOTAL PAYMENT | | $ | |

FORM NO. MSADA-102-7714 Rev. 2/14



taned inside the engine

eld washer fluid reservoir cap.
uid reservoir access cover.
m pollen filter access cover.
ed supply module (fuses).



ing devices should lock in

:ions:

ie external temperature is

for a long time, or long

n indicated on the

d cleaning and lubrication;
haust - fuel supply system -

## MAINTENANCE AND CARE 

### Checking tires

Tire pressure should be checked and, if necessary, adjusted at least once a month (see paragraph "Tire pressure" under section "Technical specifications"). Tires should be also checked for the presence of wear or visible damages.
The original tires fitted on vehicle have special tread wear indicators helping defining when they need replacing. These indicators are impressed on tread pattern.
Change tires as soon as tread wear indicators become visible.

*NOTE:*

- *In order to maintain high performance and safety level under all driving conditions, Maserati strongly recommends to use tires equivalent to the originals in size, quality and performance when replacement is needed.*
- *Maserati recommends Maserati Genuine Tires marked with "MGT" logo specifically designed for its models.*
- *We recommend fitting winter tires on the vehicle at temperatures 45 °F (7 °C) since the driving performance of summer tires is reduced at low temperatures. Summer tires may be permanently damaged at extremely low temperatures.*
- *Comply with all state and local laws governing snow tire and tread depth requirements.*

### SCHEDULED MAINTENANCE

The following scheduled maintenance operations must be carried out according to the specified time or mileage intervals for maintaining warranty coverage and ensure original performance and reliability over time.
Shorter maintenance intervals could be necessary when vehicle is used under severe operating conditions, such as on dusty roads and/or for frequent or short journeys.
Inspection and maintenance operations must be carried out whenever you suspect a failure has occurred.
Maserati strongly recommends that the maintenance operations at the specified intervals are carried out by an Authorized Maserati Dealer.

### Scheduled maintenance plan

 See Warnings page 122

| Main operations Service coupons | Interval running coupons: every 12,500 mi (20,000 km) or 1 year | | | | | |
|---|---|---|---|---|---|---|
| | 1° | 2° | 3° | 4° | 5° | 6° |
| | Available Pre-Paid Maintenance Program | | | | | |
| Vehicle road test | | I | | I | | I |
| Check with Maserati Diagnosis | I | I | I | I | I | I |
| Engine oil and filter | R | R | R | R | R | R |
| | Replace at least every year | | | | | |
| Engine coolant level | I | I | I | I | I | I |

91



*Exhibit 4*

**American Auto Collision**
155 North Beacon Street
Brighton, MA 02135
(617) 782-7866
armensauto@gmail.com
www.trustthisbiz.com/american_auto_collision

| SOLD BY: Sessro | DATE: 12/21/17 | Mileage 11205 |
| NAME: STEPAN PETROSYAN | 2017 MASERATI GHIBLI VIN # ZAM57RTA0H1218967 | |
| ADDRESS: ███████ | | |

| QTY. | DESCRIPTION | | |
|---|---|---|---|
| | Oil Change Full Synthetic "5W40" | $ 45 | 00 |
| | Replaced Oil Filter OEM | | |
| | * Customer provided Filter & oil | | |
| | Hand Wash / Interior Vaccum | $ 50 | 00 |
| | Check & Reset Tire Pressures | $ 0 | 00 |
| | | | |
| | | | |
| | | | |
| | | | |

| THANK YOU | PAY THIS AMOUNT ➡ | $ 95 | 00 |

| RECEIVED BY: | SIGNATURE: |



Exhibit 5

**American Auto Collision**
155 North Beacon Street
Brighton, MA 02135
(617) 782-7866
armensauto@gmail.com
www.trustthisbiz.com/american_auto_collision

SOLD BY: SERGIO            DATE: 01/02/19    MILEAGE 22,572

2017 MASERATI GHIBLI

NAME: STEPAN PETROSYAN / VIN# ZAM57RTAOH12189

ADDRESS: ███████████████████████

| QTY. | DESCRIPTION | $ | |
|------|-------------|---|---|
| | 5W40 Full Synthetic Oil Change | $ 45 | 00 |
| | Replaced Oil Filter "OEM" | — | |
| | | | |
| | Hand wash / wax / vaccum | $ 95 | 00 |
| | | | |
| | Customer provided oil & OEM Filter | | |
| | | | |
| | | | |
| | | | |

*THANK YOU*        PAY THIS AMOUNT ➡    $ 140 | 00

RECEIVED BY:                    SIGNATURE:

Mail - █████████████  Page 1 of 3

# EXTERNAL EMAIL: Fwd: MASERATI

Stepan Petrosyan ████████████████████

Mon 6/17/2019 3:02 PM

To:Stepan Petrosyan <Stepan.Petrosyan@shaws.com>;

Sent from my iPhone

Begin forwarded message:

> From: Stepan Petrosyan <████████████████
> Date: March 29, 2019 at 7:08:28 PM EDT
> To: Michelle Petrarca <████████████████
> Subject: Re: MASERATI

Michelle,

Thank you for your response. I look forward to hearing from you on Monday.

Stepan

Sent from my iPhone

On Mar 29, 2019, at 6:07 PM, Michelle Petrarca <████████████████wrote:

Stepan,

I am sorry that you feel that way. My call was to let you know that Maserati might ask for those receipts for the oil services.
We are here to advocate for you. I did say that we would also tell them that if they requested we can confirm if the proper filter has been placed in the vehicle.
I can understand your frustration in the matter since it is your vehicle. As promised the information will be sent over to Maserati. The technician needs to re open a case as too much time elapsed. Maserati has already closed the current case, however, they are aware that you were looking for the receipts, so they will open with no issues.

I am an advocate for you and I think that maybe you might have been thinking I was not on your side, I do need to give you all of the information and don't want you to get caught off guard.

Let us move on and see what Maserati comes back with. I hope these receipts will suffice and we can get this done for you.

Exhibit 7

# AMERICAN AUTO COLLISION
### 155 NORTH BEACON ST, BRIGHTON, MA 02135
### Phone: (617) 782-7866

| | |
|---|---|
| Workfile ID: | 54a2993a |
| Federal ID: | 042732986 |

## Preliminary Estimate

**Customer: PETROSYAN, STEPAN**

Job Number:

| | | | | | |
|---|---|---|---|---|---|
| Insured: | PETROSYAN, STEPAN | Policy #: | | Claim #: | N/A |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 |
| Point of Impact: | | | | | |

**Owner:**
PETROSYAN, STEPAN

**Inspection Location:**
AMERICAN AUTO COLLISION
155 NORTH BEACON ST
BRIGHTON, MA 02135
Repair Facility
(617) 782-7866 Business

**Insurance Company:**

## VEHICLE

2017 MASE Ghibli S Q4 4D SED 6-3.0L Turbocharged Gasoline Gasoline Direct Injection BLACK

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VIN: | ZAM57RTA0H1218967 | Interior Color: | TAN | Mileage In: | 11,205 | Vehicle Out: | |
| License: | 3FB362 | Exterior Color: | BLACK | Mileage Out: | 11,205 | | |
| State: | | Production Date: | | Condition: | | Job #: | |

| | | | |
|---|---|---|---|
| **TRANSMISSION** | Overhead Console | **RADIO** | Hands Free Device |
| Automatic Transmission | Wood Interior Trim | AM Radio | **ROOF** |
| 4 Wheel Drive | **CONVENIENCE** | FM Radio | Electric Glass Sunroof |
| **POWER** | Air Conditioning | Stereo | **SEATS** |
| Power Steering | Intermittent Wipers | Search/Seek | Bucket Seats |
| Power Brakes | Tilt Wheel | CD Player | Leather Seats |
| Power Windows | Cruise Control | Auxiliary Audio Connection | Heated Seats |
| Power Locks | Rear Defogger | Satellite Radio | **WHEELS** |
| Power Mirrors | Keyless Entry | Equalizer | Aluminum/Alloy Wheels |
| Heated Mirrors | Alarm | **SAFETY** | **PAINT** |
| Power Driver Seat | Message Center | Drivers Side Air Bag | Clear Coat Paint |
| Power Passenger Seat | Steering Wheel Touch Controls | Passenger Air Bag | **OTHER** |
| Memory Package | Telescopic Wheel | Anti-Lock Brakes (4) | Traction Control |
| **DECOR** | Climate Control | 4 Wheel Disc Brakes | Stability Control |
| Dual Mirrors | Navigation System | Front Side Impact Air Bags | Xenon Headlamps |
| Tinted Glass | Backup Camera w/Parking Sensors | Head/Curtain Air Bags | Headlamp Washers |
| Console/Storage | Home Link | Positraction | Power Trunk/Gate Release |

## Preliminary Estimate

**Customer: PETROSYAN, STEPAN**

**Job Number:**

2017 MASE Ghibli S Q4 4D SED 6-3.0L Turbocharged Gasoline Gasoline Direct Injection BLACK

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|------|-------------|-------------|-----|------------------|-------|-------|
| 1 | # | FULL SYNTHETIC OIL CHANGE | | 1 | 45.00 | | |
| 2 | # | 5W40 FULL SYNTHETIC PENNZOIL EURO PLATINUM OIL (QUARTS) | | 9 | | | |
| 3 | # | REPLACED OIL FILTER "OEM" PART#311401 | | 1 | | | |
| 4 | # | REPLACED OIL FILTER GASKET PART#10261860 | | 1 | | | |
| 5 | # | REPLACED OIL DRAIN PLUG PART#104280 | | 1 | | | |
| 6 | # | **CUSTOMER PROVIDED OIL FILTER& COMPONENTS, & OIL** | | 1 | | | |
| 7 | # | HANDWASH & INTERIOR VACUUM | | 1 | 50.00 | | |
| 8 | # | CHECKED & RESET TIRE PRESSURES | | 1 | | | |
| 9 | # | THIS INVOICE HAS BEEN ISSUED TO REFLECT THE WORK COMPLETED | | 1 | | | |
| 10 | # | ON ABOVE MENTIONED VECHICLE. ON 12/21/17 & TO REPLACE | | 1 | | | |
| 11 | # | ORIGINALLY ISSUED HANDWRITTEN INOVICE PER REQUEST OF | | 1 | | | |
| 12 | # | CUSTOMER. | | 1 | | | |
| | | **SUBTOTALS** | | | 95.00 | 0.0 | 0.0 |

### ESTIMATE TOTALS

| Category | Basis | Rate | Cost $ |
|----------|-------|------|--------|
| Parts | | | 95.00 |
| Subtotal | | | 95.00 |
| Grand Total | | | 95.00 |

**IN BUSINESS SINCE '1980
THANK YOU FOR LETTING US SERVE YOU

PER MASSACHUSETTS REG. TITLE 212 CHAPTER 2.02(5), "THIS ESTIMATE HAS BEEN PREPARED AND SWORN TO UNDER THE PENALTIES OF PERJURY."

*Exhibit 8*

# AMERICAN AUTO COLLISION

155 NORTH BEACON ST, BRIGHTON, MA 02135

Phone: (617) 782-7866

| | |
|---|---|
| Workfile ID: | 9fafd37a |
| Federal ID: | 042732986 |

## Preliminary Estimate

## Customer: PETROSYAN, STEPAN

Job Number:

| | | | | | | |
|---|---|---|---|---|---|---|
| Insured: | PETROSYAN, STEPAN | Policy #: | | Claim #: | | |
| Type of Loss: | | Date of Loss: | | Days to Repair: | 0 | |
| Point of Impact: | | | | | | |

| Owner: | Inspection Location. | Insurance Company: |
|---|---|---|
| PETROSYAN, STEPAN | AMERICAN AUTO COLLISION | |
| | 155 NORTH BEACON ST | |
| | BRIGHTON, MA 02135 | |
| | Repair Facility | |
| | (617) 782-7866 Business | |

## VEHICLE

2017 MASE Ghibli S Q4 4D SED 6-3.0L Turbocharged Gasoline Gasoline Direct Injection BLACK

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VIN: | ZAM57RTA0H1218967 | Interior Color: | TAN | Mileage In: | 22,572 | Vehicle Out: | |
| License: | 3F8362 | Exterior Color: | BLACK | Mileage Out: | 22,572 | | |
| State: | MA | Production Date: | | Condition: | | Job #: | |

| TRANSMISSION | Overhead Console | RADIO | Hands Free Device |
|---|---|---|---|
| Automatic Transmission | Wood Interior Trim | AM Radio | ROOF |
| 4 Wheel Drive | CONVENIENCE | FM Radio | Electric Glass Sunroof |
| POWER | Air Conditioning | Stereo | SEATS |
| Power Steering | Intermittent Wipers | Search/Seek | Bucket Seats |
| Power Brakes | Tilt Wheel | CD Player | Leather Seats |
| Power Windows | Cruise Control | Auxiliary Audio Connection | Heated Seats |
| Power Locks | Rear Defogger | Satellite Radio | WHEELS |
| Power Mirrors | Keyless Entry | Equalizer | Aluminum/Alloy Wheels |
| Heated Mirrors | Alarm | SAFETY | PAINT |
| Power Driver Seat | Message Center | Drivers Side Air Bag | Clear Coat Paint |
| Power Passenger Seat | Steering Wheel Touch Controls | Passenger Air Bag | OTHER |
| Memory Package | Telescopic Wheel | Anti-Lock Brakes (4) | Traction Control |
| DECOR | Climate Control | 4 Wheel Disc Brakes | Stability Control |
| Dual Mirrors | Navigation System | Front Side Impact Air Bags | Xenon Headlamps |
| Tinted Glass | Backup Camera w Parking Sensors | Head/Curtain Air Bags | Headlamp Washers |
| Console/Storage | Home Link | Positraction | Power Trunk/Gate Release |

## Preliminary Estimate

**Customer: PETROSYAN, STEPAN**                                                  **Job Number:**

2017 MASE Ghibli S Q4 4D SED 6-3.0L Turbocharged Gasoline Gasoline Direct Injection BLACK

| Line | Oper | Description | Part Number | Qty | Extended Price $ | Labor | Paint |
|------|------|-------------|-------------|-----|-----------------|-------|-------|
| 1 | # | FULL SYNTHETIC OIL CHANGE | | 1 | 45.00 | | |
| 2 | # | 5W40 FULL SYNTHETIC PENNZOIL EURO PLATINUM OIL (QUARTS) | | 9 | | | |
| 3 | # | REPLACED OIL FILTER "OEM" PART# 311401 | | 1 | | | |
| 4 | # | REPLACED OIL FILTER GASKET "OEM" PART #10261860 | | 1 | | | |
| 5 | # | REPALCED OIL DRAIN PLUG "OEM" PART # 104280 | | 1 | | | |
| 6 | # | ** CUSTOMER PROVIDED OIL AND OIL FILTER & COMPONENTS*** | | 1 | | | |
| 7 | # | HAND WASH, WAX, & INTERIOR VACUUM | | 1 | 95.00 | | |
| 8 | # | THIS INVOICE HAS BEEN ISSUED TO REFLECT WORK COMPLETED ON | | 1 | | | |
| 9 | # | ABOVE DESCRIBED VEHICLE ON 01/02/19 & TO REPALCE | | 1 | | | |
| 10 | # | ORIGINALLY ISSUED HANDWRITTEN INVOICE PER REQUEST | | 1 | | | |
| | | **SUBTOTALS** | | | **140.00** | **0.0** | **0.0** |

### ESTIMATE TOTALS

| Category | Basis | Rate | Cost $ |
|----------|-------|------|--------|
| Parts | | | 140.00 |
| Subtotal | | | 140.00 |
| **Grand Total** | | | **140.00** |
| Deductible | | | 0.00 |
| **CUSTOMER PAY** | | | **0.00** |
| **INSURANCE PAY** | | | **140.00** |

**IN BUSINESS SINCE '1980
THANK YOU FOR LETTING US SERVE YOU



PER MASSACHUSETTS REG. TITLE 212 CHAPTER 2.02(5), "THIS ESTIMATE HAS BEEN PREPARED AND SWORN TO UNDER THE PENALTIES OF PERJURY."

Exhibit 9

4/22/19, 9:52 PM

## Re: Quote

Stepan Petrosyan
Mon 4/22/2019 8:05 PM
To: Michelle Petrarca ‹███████████████m›
Cc: Jose Grullon ‹J███████

Is it possible to get it in 'written estimate' format?

Sent from my iPhone

On Apr 22, 2019, at 3:49 PM, Michelle Petrarca ‹███████████████m› wrote:

> Good Afternoon,
>
> Parts cost for complete engine is $18, 361.25. Labor costs $10,341.57
>
> Regards
> Michelle

**From:** Stepan Petrosyan ███████████›
**Sent:** Monday, April 22, 2019 3:32 PM
**To:** Michelle Petrarca ‹M████████████›
**Cc:** Jose Grullon ‹J█████████
**Subject:** Re: Quote

Good Afternoon Michelle / Jose,

Just following up to see if you were able to prepare a written estimate for the repairs?

Thanks,
Stepan

Sent from my iPhone

On Apr 19, 2019, at 11:24 AM, Stepan Petrosyan ‹█████████████› wrote:

> Could you please send me a written estimate so I know what part of the money will be for materials and what will be for labor and scope of work that will be done.
>
> Thanks,
>
> Sent from my iPhone
>
> On Apr 19, 2019, at 10:08 AM, Michelle Petrarca ‹██████████████m› wrote:
>
>> $28,708.82 tax included

31179          Promised:13:36 07MAR19       *INVOICE*       DUPLICATE 3          PAGE

Exhibit 10

**Herb Chambers Maserati**
531 Boston Post Road, Rte. 20
Wayland, MA 01778
508-358-3500
www.herbchambers.com

MASERATI

| CUSTOMER NO. 6515 | SERVICE ADVISOR 505 SEAN STASKAWICZ | TAG NO. T967 | INVOICE DATE 17 Apr 2019 | INVOICE NO. 31179 |
|---|---|---|---|---|
| | HOURLY RATE 0.00 | LICENSE NO. | PO NO. | COLOR BLACK | NO. STOCK / STOCK NO. M421 |
| STEPHAN PETROSYAN | YEAR/MAKE/MODEL 17 MASERATI GHIBLI S | | MILEAGE IN 24255 | MILEAGE OUT 24255 |
| | VEHICLE IDENTIFICATION NO.) ZAM57RTA0H1218967 | | DELIVERY DATE 12 Nov 2016 | IN SERVICE DATE |
| | CELL PHONE | SALES PERSON OLDMIXON,WILLIA | R.O. DATE 07 Mar 2019 | WAR EXP. |
| | TEL. BUSINESS EXT. | COMMENTS SOLD-STK:M421 TRN:A 9 | | |

LINE OPCODE TECH TYPE HOURS.                                      LIST        NET        TOTAL
M COMPLIMENTARY WASH AND VAC UPON COMPLETION OF SERVICE.
   WASH COMPLIMENTARY WASH AND VAC UPON COMPLETION
      OF SERVICE.
         999 CPAR                                                  0.00        0.00
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE M:                  0.00
         * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
N COMPLIMENTARY LOANER CAR. NO EZ PASS PROVIDED. NO SMOKING. PLEASE
   REPLACE GAS USED OR CHARGES WILL BE APPLIED. CARS MUST BE
   RETURNED WITHIN 48HRS OF WORK COMPLETED.
      LOANER COMPLIMENTARY LOANER CAR. NO EZ PASS
         PROVIDED. NO SMOKING. PLEASE REPLACE GAS
         USED OR CHARGES WILL BE APPLIED. CARS MUST
         BE RETURNED WITHIN 48HRS OF WORK COMPLETED:
         999 CPAR                                                  0.00        0.00
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE N:                  0.00
         * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
O client states please perform campaign 342 piliot side airbag
CAUSE: 342 CAMPAIGN
   57 client states please perform campaign 342
      piliot side airbag
         492    WM                                                            (N/C)
         2 1731325 LOW PROFILE MINI FUSE 25                                   (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE O:                  0.00
 INSPECTED SEAT WIRING. TAPED MOTORS AND INSTALLED ZIP TIES ON
WIRING.
         * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
P please perform campaign camapign 344 Q4 logo update
CAUSE: 344 CAMPAIGN
   57 please perform campaign camapign 344 Q4 logo
      update
         492    WM                                                            (N/C)
         1 670101231 SQ4 BADGE                                                (N/C)
PARTS:    0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE P:                  0.00
 PERFORMED 344 CAMPAIGN.

| ☐CASH | ☐CHECK  CK NO. [        ] | | DESCRIPTION | TOTALS |
|---|---|---|---|---|
| ☐VISA | ☐MASTERCARD | | LABOR AMOUNT | |
| ☐AMEX | ☐CHARGE | ☐OTHER | PARTS | |
| | | | GAS, OIL, LUBE | |

*THANK YOU FOR CHOOSING HERB CHAMBERS MASERATI*

| | |
|---|---|
| SUBLET REPAIRS | |
| MISCELLANEOUS CHARGES | |
| TOTAL CHARGES | |
| LESS DISCOUNT/INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

_____
Customer Signature

Environmental Compliance
Federal and state laws require that all hazardous waste (oil, solvents, anti-freeze, etc.) must be disposed of by a licensed contractor in an environmentally
safe manner. Any charges for environmental compliance reflect our conformity to federal and state law in addition to our concern for the preservation of

31179          Promised:13:36 07MAR19          *INVOICE*          DUPLICATE.3          PAGE

# Herb Chambers Maserati

MASERATI
531 Boston Post Road, Rte. 20
Wayland, MA 01778
508-358-3500
www.herbchambers.com

| CUSTOMER NO.<br>6515 | | SERVICE ADVISOR<br>505 SEAN STASKAWICZ | TAG NO.<br>T967 | INVOICE DATE<br>17 Apr 2019 | INVOICE NO.<br>31179 |
|---|---|---|---|---|---|
| STEPHAN PETROSYAN | | HOURLY RATE<br>0.00 | LICENSE NO. | PO NO. | COLOR<br>BLACK | NO. STOCK / STOCK#<br>M421 |
| | | YEAR/MAKE/MODEL<br>17 MASERATI GHIBLI S | | MILEAGE IN<br>24255 | MILEAGE OUT<br>24255 |
| | | VEHICLE IDENTIFICATION NO.<br>ZAM57RTA0H1218967 | | DELIVERY DATE<br>12 Nov 2016 | IN SERVICE DATE |
| EMAIL ADDRESS | | CELL PHONE | SALES PERSON<br>OLDMIXON,WILLIA | R.O. DATE<br>07 Mar 2019 | WAR EXP. |
| | TEL BUSINESS EXT. | COMMENTS SOLD-STK:M421 TRN:A 9 | | | |

```
LINE OPCODE TECH TYPE HOURS                        LIST      NET      TOTAL
Q please perform campaign 354
CAUSE: 354 CAMPAIGN
      57 please perform campaign 354
          492    WM
       3 675000401 NOISE-PROOF FELT PAD                                (N/C)
                                                                       (N/C)
PARTS:    0.00  LABOR:     0.00  OTHER:    0.00  TOTAL LINE Q:
  PERFORMED 354 CAMPAIGN.                                              0.00
      ***********************************************
R please perform campaign 365 program ignition
CAUSE: 365 CAMPAIGN
      57 please perform campaign 365 program ignition
          492    WM
PARTS:    0.00  LABOR:     0.00  OTHER:    0.00  TOTAL LINE R:        (N/C)
  PERFORMED 365 CAMPAIGN.                                             0.00
      ***********************************************
S CLIENT STATES CHECK ENGINE LIGHT IS ON
      57 CHECK ENGINE LIGHT ON KNOCKING SOUND COMING
          FROM ENGINE
          492 IMSP
PARTS:    0.00  LABOR:     0.00  OTHER:    0.00  TOTAL LINE S:        (N/C)
  ENGINE KNOCKING AND LOW OIL PRESSURE LIGHT ON. CHECKED OIL LEVEL,   0.00
  OIL IS FULL. SCANNED FOR CODES, FOUND OIL PRESSURE LOW CODE. VEHICLE
  WAS DRIVEN TO DEALER EVEN WITH THE LOW OIL PRESSURE WARNING LIGHT ON.
  CHECKED FOR SERVICE HISTORY AND THERE IS NO SERVICE HISTORY EXCEPT FOR
  CAMPAIGNS. THE OIL FILTER CAP IS NOT A MASERATI OIL FILTER CAP. THERE
  IS A CLEAR KNOCKING NOISE COMING FROM THE OIL SUMP AREA. OIL DOES NOT
  LOOK TO HAVE AND FUEL OR METAL IN IT. ATTACHED ALL PICTURES AND
  PARAMETERS PER BOL. MASERATI REQUESTED INVOICES FROM OWNER FOR SERVICES
  DONE. ATTACHED INVOICES THAT WERE PROVIDED AS WELL AS RECEIPTS THAT
  WERE PROVIDED TO SERVICE. WARRANTY RESPONSE FROM MASERATI AS FOLLOWS,
  "ATTACHED MAINTENANCE RECEIPTS ARE NOT VALID PER MASERATI REQUIREMENTS.
  NO INVOICE NUMBER ON THEM, NO CUSTOMER SIGNATURE AND NO INDICATION THAT
  THEY WERE PAID. THE INVOICE ALSO STATES THAT THE CUSTOMER PROVIDED THE
  OIL AND OEM FILTER." ADVISED CLIENT NO WARRANTY REPAIRS AVAILABLE AT
```

| | | |
|---|---|---|
| ☐CASH | ☐CHECK   CK NO. [        ] | |
| ☐VISA | ☐MASTERCARD | |
| ☐AMEX | ☐CHARGE | ☐OTHER |

*THANK YOU FOR CHOOSING HERB CHAMBERS MASERATI*

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | |
| PARTS | |
| GAS, OIL, LUBE | |
| SUBLET REPAIRS | |
| MISCELLANEOUS CHARGES | |
| TOTAL CHARGES | |
| LESS DISCOUNT/INSURANCE | |
| SALES TAX | |
| PLEASE PAY THIS AMOUNT | |

Customer Signature

Environmental Compliance

Federal and state laws require that all hazardous waste (oil, solvents, anti-freeze, etc.) must be disposed of by a licensed contractor in an environmentally
safe manner. Any charges for environmental compliance reflect our conformity to federal and state law in addition to our concern for the preservation of
the environment.

31179     Promised:13:36 07MAR19    *INVOICE*     DUPLICATE 3       PAGE

**Herb Chambers Maserati**
531 Boston Post Road, Rte. 20
Wayland, MA 01778
508-358-3500
*www.herbchambers.com*

MASERATI

| CUSTOMER NO. 6515 | | SERVICE ADVISOR 505 SEAN STASKAWICZ | TAG NO. T967 | INVOICE DATE 17 Apr 2019 | INVOICE NO. 31179 |
|---|---|---|---|---|---|
| STEPHAN PETROSYAN | | HOURLY RATE 0.00 | LICENSE NO. | PO NO. | COLOR BLACK | NO. STOCK / STOCK M421 |
| | | YEAR/MAKE/MODEL 17 MASERATI GHIBLI S | | MILEAGE IN 24255 | MILEAGE OUT 24255 |
| | | VEHICLE IDENTIFICATION NO. ZAM57RTA0H1218967 | | DELIVERY DATE 12 Nov 2016 | IN SERVICE DATE |
| EMAIL ADDRESS | | CELL PHONE | | SALES PERSON OLDMIXON,WILLIA | R.O. DATE 07 Mar 2019 | WAR EXP. |
| | TEL BUSINESS EXT. | COMMENTS SOLD-STK:M421 TRN:A 9 | | | |

```
LINE OPCODE TECH TYPE HOURS                          LIST     NET    TOTAL
THIS TIME, ASKED IF WAS GOING TO CONTACT INSURANCE COMPANY GAVE 4 DAYS
AND THEN REQUESTING VEHICLE TO BE TRANSPORTED OUT AND LOANER RETURNED
IF NO REPAIRS ARE MADE.
             ***************************************************
T CLIENT STATES LOW OIL IND ON
  57 LOW OIL INDICATOR
           492   CPM                                         0.00
PARTS:     0.00  LABOR:      0.00  OTHER:      0.00  TOTAL LINE T:         0.00
please refer to line S                                                    0.00
             ***************************************************
```

| ☐ CASH | ☐ CHECK   CK NO. [       ] | | DESCRIPTION | | TOTALS |
|---|---|---|---|---|---|
| ☐ VISA | ☐ MASTERCARD | | LABOR AMOUNT | $ | 0.00 |
| ☐ AMEX | ☐ CHARGE | ☐ OTHER | PARTS | $ | 0.00 |
| | | | GAS, OIL, LUBE | $ | 0.00 |
| *THANK YOU FOR CHOOSING HERB CHAMBERS MASERATI* | | | SUBLET REPAIRS | $ | 0.00 |
| | | | MISCELLANEOUS CHARGES | $ | 0.00 |
| | | | TOTAL CHARGES | $ | 0.00 |
| Customer Signature | | | LESS DISCOUNT/INSURANCE | $ | 0.00 |
| Environmental Compliance | | | SALES TAX | $ | 0.00 |

Federal and state laws require that all hazardous waste (oil, solvents, anti-freeze, etc.) must be disposed of by a licensed contractor in an environmentally safe manner. Any charges for environmental compliance reflect actual costs.

Exhibit 11



# MASERATI
*Ghibli*

**WARRANTY CARD**
**GARANTÍA**





## Limited Warranty

The MASERATI limited warranties contained in this booklet are limited to the United States of America and Puerto Rico and apply only to vehicles sold and serviced in the United States and Puerto Rico.

Maserati North America, Inc. (herein referred to as MASERATI) warrants to the first retail purchaser and to subsequent retail purchasers (except as hereinafter provided) each new U.S. specification MASERATI Vehicle sold by an Authorized MASERATI Dealer to the retail purchaser to be free under normal use and service from defects in material and workmanship for a period of forty-eight (48) months or 50,000 miles (whichever comes first) from the date of delivery to the first retail purchaser.

To obtain warranty service coverage, on discovery of a defect in workmanship or material, the vehicle must be brought to any Authorized MASERATI Dealer in the U.S. or Puerto Rico during normal business hours. The Authorized MASERATI Dealer will, without charge for parts or labor, either repair or replace the defective parts using new or authorized remanufactured parts. The decision to repair or replace said parts is solely the prerogative of MASERATI. Parts for which replacements are made become the property of MASERATI.

ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE DURATION OF THIS EXPRESS LIMITED WARRANTY.

MASERATI NORTH AMERICA, INC. HEREBY EXCLUDES INCIDENTAL AND CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF TIME, INCONVENIENCE, OR LOSS OF USE OF THE VEHICLE, FOR ANY BREACH OF ANY EXPRESS OR IMPLIED WARRANTY, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, APPLICABLE TO THIS PRODUCT.

Some states do not allow limitation on how long an implied warranty lasts, so the above limitation may not apply to you. This warranty gives you specific legal rights and you may have other rights which vary from state to state.

### Safety Belt Warranty-Kansas

Safety belts are covered under the new car limited warranty for a period of 10 years, unlimited mileage from the date of purchase.

### BBB AUTO LINE:

If your concern is still not resolved to your satisfaction, MNA offers additional assistance through BBB AUTO LINE in CALIFORNIA, FLORIDA, and MINNESOTA.
BBB AUTO LINE is a dispute resolution program administered by the Council of Better Business Bureaus. BBB AUTO LINE resolves disputes through arbitration. Arbitration is an informal proceeding in which an impartial third party renders a decision after a hearing at which both parties have an opportunity to be heard.

The program is free of charge to you, the consumer, but there are some minimum requirements for participation in the program. Please contact BBB AUTO LINE at the address or phone number below for more details:
BBB AUTO LINE
3033 Wilson Boulevard, Suite 600
Arlington, VA 22201-3843
1-800-955-5100

If you wish to use the program and you qualify for participation, you will be required to provide the following information:

- Your name and address
- The Vehicle Identification Number (VIN)
- The make, model and year of your vehicle
- A description of the problem with your vehicle

BBB AUTO LINE will also ask you for other information that may help resolve your concerns, such as the purchase price of your vehicle, any mileage at the time of purchase, the current mileage, and copies of the repair orders.
BBB AUTO LINE will notify you when your claim has been filed. If you decide to arbitrate, you may attend the hearing in person or by telephone. You may bring witnesses and give supporting evidence. You may also submit your claim in writing and ask for a decision on the documents you submit without attending the hearing. BBB AUTO LINE will usually render a decision within 40 days from the time you file your complaint.



## Exclusions from Warranty

MASERATI's obligation under the above warranty excludes:

- Wear and tear items:
  - Battery
  - Clutch release bearings
  - Clutch pressure plates and center plates
  - Tires
  - Wiper blades
  - Seat and backrest covers
  - Floor coverings
  - Spark plugs
  - Batteries for key fobs and alarms
  - Light bulbs
  - Driving belts
  - Brake linings and disc pads
  - Rubber parts
  - Remote control transmitter battery replacement;
- Fading and deterioration of paint, chrome and trims due to normal wear or abnormal exposure to the elements or abnormal climatic conditions;
- Normal maintenance services, including but not limited to:
  - Lubrication and filters;
  - Replacement of brake pad linings;
  - Replacement of clutch disc and pressure plates;
  - Replacement of windshield wiper blades;
  - Replacement of light bulbs and fuses;
  - Wheel alignment, balancing and adjustment;
  - Tires, which are warranted separately by the tire manufacturer. The applicable tire warranty booklet for your vehicle has been placed in your car.

- Glass breakage, unless it occurs as a result of defects in material or workmanship.
- Damage by use of fuel, oil or lubricants other than those specified, as indicated in your Owner's Manual.
- Damage to the interior (soft trim) due to normal wear and tear, misuse, or negligence.
- Damage caused by environmental conditions (e.g., acid rain)
- Damage which results from negligence, improper operation of the vehicle, improper repair, lack of improper maintenance, environmental influences, flood, accident or fire damage, road salt corrosion, or use of improper or contaminated fuel.
- Damage to the engine, transmission or any related component caused by improper shifting of the transmission.
- Repairs which are required as result of improper maintenance, misuse, negligence and accidents or due to repairs not compliant to manufacturer standards.
- Modification of the vehicle or installation of any performance accessories or components attached to the vehicle which alters the original components, electrical interference, electrical short, radio static, water leaks and wind noise.
- Maintenance services and parts when replaced during maintenance such as spark plugs (gasoline engines only), lubricants, fluids, engine tune-up parts, replacement of filters, coolant, and refrigerant.

- Failure to maintain the vehicle properly in accordance with the instructions in the Owner's Manual or the Service section of this Statement that results in the failure of any part of the vehicle.
- Failure to Maintain Battery:
  - If you drive your MASERATI vehicle only for short distances over a prolonged period of time, without an occasional drive at highway speeds, the engine's charging system will not maintain the battery charged.
  - Insufficient use of the vehicle could result in short term starting problems and in the long term could damage the battery.
  - Consider using a proper trickle charger, following the trickle charger's manufacturer instructions to maintain the battery state of charge.
  - Consult your Authorized MASERATI Dealer regarding battery removal. If the battery will be stored for over 3 months, it must be recharged every 3 months or else it will be damaged and useless.

12



Tires are warranted by their respective manufacturer. See the Tire Warranty Statement.

Driving over rough or damaged road surfaces, as well as debris, curbs and other obstacles can cause serious damage to wheels, tires and suspension parts. This is more likely to occur with low-profile tires that provide less cushioning between the wheel and the road. Be careful to avoid road hazards and reduce your speed, especially if your vehicle is equipped with low-profile tires.

Non-Genuine MASERATI parts and accessories - While you may elect to use non-genuine MASERATI parts and accessories, Maserati shall have no obligation under the new vehicle warranty to pay for repairs that include Non-genuine MASERATI parts or accessories or for any damage resulting from the use of Non-Genuine parts.

Non-Factory approved parts and accessories: While you may elect to use non-Factory approved parts and accessories, MASERATI shall have no obligation to pay for repairs that include Non-factory approved parts and accessories or for any damage resulting from the use of Non-factory approved parts and accessories.

Modification of the vehicle or installation of any performance accessories or components attached to the vehicle which alters the original components, electrical interference, electrical short, radio static, water leaks and wind noise.

This warranty shall be null and void if the Vehicle Identification Number (VIN) has been altered or cannot be read, if the odometer has been replaced or altered and the true mileage cannot be determined, if the vehicle has been declared a total loss or sold for salvage purposes, or if the vehicle has been used in any competitive event.



## Normal Vehicle Use

The owner's maintenance instructions contained in the Owner's Manual are based on the assumption that the vehicle will be used as designed:

- To carry passengers and cargo within the limitations indicated on the vehicle Tire Label affixed inside the car;
- On reasonable road surfaces within legal operating limits;
- On a daily basis, as a general rule, for at least several miles.

## Owner Obligations

The operation, maintenance and care of your MASERATI according to the instructions and requirements listed in your Owner's Manual and Warranty and Service Book is your responsibi ity.

Items such as, but not limited to, cleaning, polishing, lubrication, tune-ups, replacement of worn wiper blades and brake pads, must be completed at the recommended intervals or at shorter intervals, if required, and are the owner's responsibility.

It is also your responsibility to keep a copy of all repair orders and receipts as well as all records of all maintenance services performe including engine and oil filter changes.

Records of these services may be requested for substantiation of proper maintenance, and should be transferred to each subsequ owner.

For your convenience, each one of the service maintenance records contained in t booklet has a specific space for the signatu of the person performing the maintenance service.

## General Warranty Information

### Warranty Service

During the warranty period, warranty service as provided by this policy will be performed by any Authorized MASERATI Dealer in the U.S.A. or Canada. There will be no charge for the parts or for the labor to replace the parts, provided you bring your vehicle to the dealer.

As the service during the warranty period may have to be performed by an Authorized MASERATI Dealer other than the selling dealer, this booklet must be carried with you. This booklet will be proof that your car is within the warranty period; otherwise, the servicing dealer may charge you for the warranty work.

### Customer Assistance

Maserati North America Inc., and Authorized MASERATI Dealers are extremely interested in your satisfaction with, and loyalty to, our products. Therefore, should you encounter a problem in connection with your vehicle or its warranty, we suggest that you follow the procedures in the order as outlined herein:

1) Contact your Authorized MASERATI Dealer principal (cr the designated manager) and discuss the particular condition encountered. This should result in the necessary corrective action. If it does not, proceed with step 2.

2) Contact Maserati North America at:
   250 Sylvan Avenue
   Englewood Cliffs, NJ 07632
   Telephone: 201-816-2600

It will greatly assist if you have the followin information available when you contact an dealer or Maserati North America:

- Model and year of vehicle:
- Chassis number of vehicle:
- Date of Purchase:
- Name of Selling Dealer:
- Present Mileage of Vehicle:
- Nature of condition encountered (please provide as much information as possible)

**Note:**
It is the direct responsibility of the Authoriz MASERATI Dealer to take care of any problems or answer any questions which you may encounter with your MASERATI. However, Maserati North America Inc., is ready and willing to intercede on your beh should the occasion arise.

24

Exhibit 12

# EXTERNAL EMAIL: Fwd: MASERATI

Stepan Petrosyan ████████████████████████

Mon 6/17/2019 2:57 PM

To Stepan Petrosyan ████████████████████

Sent from my iPhone

Begin forwarded message:

> From: Michelle Petrarca <████████████████████om>
> Date: April 9, 2019 at 12:37:13 PM EDT
> To: Stepan Petrosyan ████████████████om>, Jose Grullon <████████████████m>
> Subject: RE: MASERATI

Good Afternoon Stepan,

I had forwarded your invoices yesterday to Maserati as we said we would. The case was forwarded to Maserati Warranty Management.
At this time they have refused the claim and closed. "Attached maintenance receipts are not valid per Maserati requirements. No invoice number on them, no customer signature and no indication that they were paid. The invoice also states that the customer provided the oil and OEM filter."

You are welcome to call Maserati Customer Care at this time if you wish. 201.510.2369

This decision has been made on the factory level. It is not made on the dealer level. We give them all of the information that they require and all information that you have given us.

Please let us know this week how you are going to proceed with the vehicle. Will you be contacting your insurance company? If you have any questions please contact us.
Unfortunately, we will also be needing the loaner vehicle back as well.

Kind regards,



MONTHLY EXPENSES

| | March | April | May | June | July | August | September | October | NOV | DEC | JAN | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Maserati Expenses | | | | | | | | | | | | |
| Monthly lease payments | $ 601.25 | $ 601.25 | $ 601.25 | $ 601.25 | $ 601.25 | $ 601.25 | $ 601.25 | $ 601.25 | | | | $ 4,810.00 |
| Car insurance/month | $ 268.00 | $ 268.00 | $ 268.00 | $ 268.00 | $ 268.00 | $ 268.00 | $ 268.00 | $ 268.00 | | | | $ 2,144.00 |
| Excise Tax/month | $ 92.00 | $ 92.00 | $ 92.00 | $ 92.00 | $ 92.00 | $ 92.00 | $ 92.00 | $ 92.00 | | | | $ 644.00 |
| Tow | | $ 20.00 | | | | | | | | | | $ 20.00 |
| | | | | | | | | | | | | $ - |
| | | | | | | | | | | | | $ - |
| Replaceent Car Expenses (old Acura) | | | | | | | | | | | | |
| Brake/Rotor repaid replacement | | $ 480.00 | | | | | | | | | | $ 480.00 |
| Exhause pipe repair | | | | $ 200.00 | | | | | | | | $ 200.00 |
| Tow | | | | $ 44.00 | | | | | | | | $ 44.00 |
| | | | | | | | | | | | | $ - |
| | | | | | | | | | | | | $ - |
| GRAND TOTAL | | | | | | | | | | | | $ 8,342.00 |

Exhibit 15

# PETER KELMAN, ESQ.
## ATTORNEY AT LAW
### 375 TOTTEN POND ROAD, SUITE 102
### WALTHAM, MASSACHUSETTS 02451-2010

WWW.KELMANLAW.COM
PKELMAN@KELMANLAW.COM

PHONE: (781) 684-8448
FAX: (781) 207-7897

### *By First Class Mail*

July 10, 2019

Sharon Shin, Esq.
Lewis Brisbois
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071
Email: Sharon.Shin@lewisbrisbois.com

Giovanni Tosti, Manager
Herb Chambers of Wayland, Inc.
533 Boston Post Road
Wayland, MA 01778

Re:    Stepan Petrosyan, Vehicle ID # ZAM57RTA0H12249867

Dear Ms. Shin and Mr. Tosti:

Unfortunately, I have not received a proposal from either of you to resolve the dispute with respect to Stepan's automobile.

Thus, I am an advising you that unless this matter is resolved within the next 30 days, I will bring a lawsuit against all appropriate parties alleging violations of Massachusetts General Laws Chapters 93A, 93B, 176D, and 128 U.S.C. §§ 1961 – 1968 for all of the reasons that I have set forth in my previous communications to you. Other causes of action will be cited as appropriate.

For your convenience and the convenience of any new eyeballs that may be viewing this for the first time, I will briefly set forth the relevant facts which give rise to Mr. Pertosyan's claims. I will be as concise as possible and mince no words.

On November 12, 2016, Mr. Petrosyan leased the above vehicle from Herb Chambers of Wayland, Inc. Mr. Petrosyan had the car serviced as required, meaning that all service to maintain the car as set forth in the owner's manual was performed. Namely, Mr. Petrosyan had the oil changed twice at 11,000 miles and 22,000 miles by his personal mechanic. If there is any doubt as to whether such service was indeed performed, please *see* Exhibit A, Affidavit of Sarkis Toukhmanian. Moreover please note that the invoice given to Stepan when he retrieved his car from Herb Chambers contained the following notes: "*Checked oil level, oil is full. ... Oil does*

July 10, 2019

Sharon Shin, Esq.
Giovanni Tosti

Page 2 of 3

*not look to have [any] fuel or metal in it.*" Such observations are inconsistent with any claim that Stepan had not changed his oil as recently as January 2019.

On or about February 25, 2019, Stepan contacted Herb Chambers so that some recall work could be taken care of. At that time his check engine had been going on and off, flickering so to speak. He reported that to Herb Chambers and was told that since the light did not remain on, that there was no urgency for his car to be serviced, and that any service relative to the light could wait until his recall work was done. Herb Chambers scheduled Stepan for service on March 7 to handle the recall work and the engine issue. On or about February 28, Stepan called Herb Chambers again because he now noticed a knocking sound coming from the engine. Herb Chambers told Stepan that such a sound was common and once again there was no reason for immediate service. Herb Chambers said that this issue would be dealt with during the already scheduled March 7 appointment. Further, Herb Chambers told Stepan that the engine issues would be covered by Maserati's warranty.

Stepan brought his car to Herb Chambers on Thursday, March 7 for his appointment. Herb Chambers kept his car for five days before informing Stepan as to the results of its service. On March 11, Herb Chambers called Stepan and told him he needed a new engine. Herb Chambers did not tell Stepan why a new engine was needed; Stepan was simply told this conclusion without any reason for the diagnosis. In fact, to this day, Stepan has never been told why the car needs a new engine. He asked Herb Chambers about this and got evasive answers. Basically, Herb Chambers did not respond to the question and just talked about the fact that this was a warranty job, and that it was up to Maserati USA ("Maserati") to determine if Maserati would cover the cost of repair.

As I have written about extensively, especially in my letter to you dated June 24, 2019, Maserati ultimately denied to cover the cost of replacing the engine under its warranty. I have attached a redacted copy of that letter, once again, for novice eyeballs. On April 17, when Stepan retrieved his car from Herb Chambers, after it had remained there for five weeks, Herb Chambers gave Stepan an invoice, invoice number 31179, dated April 17, 2019, in which Herb Chambers set forth the reasons that Maserati denied warranty coverage. The stated reasons were in quotes, suggesting that it was language that Herb Chambers received from Maserati and was quoiting *ver batim*. As I explained in my June 24 letter, all of the stated reasons were either outright lies, inventions of non-existent contract provisions, or irrelevant to the subject matter at hand. Nothing but the inadequacy of the maintenance receipts was cited as a reason for denying warranty coverage. Silence speaks volumes, and the combined silence of Maserati and Herb Chambers as to any other condition to disqualify warranty coverage will scream fraud if some other reason is now cited, *ex post facto*.

Without question, many suspicious and unexplained facts and circumstances of this highly dubious transaction clearly give rise to claims under the aforementioned statutes, including but not limited to the following,: (a) the failure of Herb Chambers to adequately service Stepan's car

July 10, 2019

Sharon Shin, Esq.
Giovanni Tosti

Page 3 of 3

when he notified them of its mechanical problems, (b) the failure of Herb Chambers to ever disclose to Stepan the reason the engine needed to be replaced; (c) the mendacity of Maserati to invent fictitious warranty requirements as the basis for denying warranty coverage to Stepan; (d) the failure of Maserati to honestly deal with Stepan with respect to processing his warranty claim; and (e) the stupidity and deceptiveness of Maserati to rely solely on Herb Chambers for an assessment of the damage to Stepan's car (never a good idea to ask the child whose hand you caught in the cookie jar to tell you who stole the cookies).

Demand is hereby made for treble payment of all damages incurred by Stepan as a result of your unfair acts and deceptive practices and for payment of all attorney's fees incurred by Stepan in prosecution of this claim.

Unless this matter is resolved in a timely manner in accordance with the demand set forth above, suit will be filed immediately. No accommodations will be given to enlarge any period of time for discussions.

I look forward to your response.


Thank you.

Sincerely yours,

Peter Kelman

Enc.
CC:     Stepan Petrosyan (via email)

**AFFIDAVIT OF**
**SARKIS TOUKHMANIAN**

I, Sarkis ("Sergio") Toukhmanian, hereby declare, under the pains and penalties of perjury that the following statements are true:

1. I am the son of Armen Toukhmanian, the owner of American Auto Collision, Inc., a Massachusetts corporation. My father has owned the company for over 35 years.

2. I am a mechanic who specializes in automotive repairs and service. I am the current manager of American Auto Collision, Inc.

3. Stepan Petrosyan is a customer of mine. I have serviced his automobile.

4. Upon review of the attached invoices, I recall performing a routine oil change and routine cleaning of his Maserati in December of 2017 and January of 2019.

5. Upon review of the attached invoices, I recall that Stepan provided me with the oil and the oil filter that I used for the oil changes.

By: _____
Sarkis Toukhmanian

7/10/2019
Date

# PETER KELMAN, ESQ.

### ATTORNEY AT LAW
### 375 TOTTEN POND ROAD, SUITE 102
### WALTHAM, MASSACHUSETTS 02451-2010

WWW.KELMANLAW.COM
PKELMAN@KELMANLAW.COM

PHONE: (781) 684 - 8448
FAX: (781) 207 - 7897

***By First Class Mail & Email***

June 24, 2019

Sharon Shin, Esq.
Lewis Brisbois
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071
Email: Sharon.Shin@lewisbrisbois.com

Re:    Stepan Petrosyan, Vehicle ID # ZAM57RTA0H12249867

Hello Sharon,

I thought I would send you this letter to give you some additional food for thought while you await receipt of documents from Maserati USA.

This weekend I had an interesting discussion a colleague. I went for a walk with an attorney friend of mine and our dogs. While we were walking I told him a little bit about the dispute between Stepan and you. My friend said it reminded him of some matters he had handled a while ago where, and this might be the part that is hard to believe, he found the RICO statute to be applicable. He then told me a little bit about RICO. And the more I thought about it I think he is right.

June 24, 2019

Legal Department
Maserati, USA

Page 2 of 5

It seems to me, that based on the facts that I know now, that there may be some collaboration, or in the words of the statute, conspiracy, between Maserati USA and Herb Chambers of Wayland. I find it rather extraordinary that each of you could come up with a similar story that would require Stepan to submit detailed maintenance receipts to you when detailed maintenance receipts are not required by your warranty. In fact, it's hard for me to fathom why you and Herb Chambers of Boston asked Stepan to provide maintenance receipts subsequent to the ones he originally provided. I have no idea where either party came up with the story that the warranty required submission of maintenance receipts requiring Stepan's signature for gosh sakes. However, I remain open to the fact that I may have missed this language in the warranty. So, if I have overlooked that language, and if you can point it out to me, I would be grateful and will reconsider my position.

But if you are going to assert that Stepan was bound by warranty language requiring the submission of detailed maintenance receipts, let me advise you of this observation. At the time Stepan leased his vehicle from Herb Chambers, he entered into a Motor Vehicle Purchase Contract. I attach a copy of said Motor Vehicle Purchase Contract to this letter. Note that right in the middle of the contract, enclosed in a little box, there is a section entitled **"WARRANTY INFORMATION."** The language below the title reads as follows:

> *This vehicle carries an express warranty. Purchaser may obtain a copy of such warranty from the dealer at time of order and will receive the warranty at time of delivery.*

As you may have surmised by now, Stepan is a fairly meticulous record keeper. He has given me all of the documents he received from Herb Chambers when they delivered his car to him in November of 2016. At that time, Stepan received a booklet entitled Maserati Ghibli Warranty Card. As far as I can tell, that's the warranty referred to in the Motor Vehicle Purchase Contract. Unless you can show that someplace in that booklet there is language requiring Stepan to provide the detailed maintenance receipts you now ask for, I think you are on thin ice.

Back to the RICO statute. Upon review of the statute, I think all elements for a cause of action are present. You see, you told me on the phone that there were several reasons that Maserati USA can deny coverage under a warranty. You said there were three reasons that warranty coverage is typically denied. However, in looking at the invoice that Stepan received from Herb Chambers of Wayland, I think Maserati USA told Stepan its reason for denial of coverage, as communicated through its agent, Herb Chambers.

The day Stepan retrieved his car from Herb Chambers, he was given an invoice. At the end, that invoice states: *"Warranty response from Maserati as follows."* That is unambiguous. Herb Chambers was listing for Stepan Maserati's reason for denying warranty coverage. Your reason, stated right on that invoice, was that the maintenance receipts he submitted were insufficient for

June 24, 2019

Legal Department
Maserati, USA

Page 3 of 5

your requirements. So, I don't see how you could now claim that there were other reasons. As they say in the law, I think you are estopped from now asserting any other reason.

Now let's examine those reasons that Herb Chambers stated that you stated were the reasons the maintenance receipts that Stepan submitted were unacceptable. I quote from the invoice Herb Chambers delivered to Stepan on April 17, 2019. That invoice, in the last paragraph states:

> *"Attached maintenance receipts are not valid per Maserati requirements. No invoice number on them, no customer signature, and no indication that they were paid. The invoice also states that the customer provided the oil and OEM filter."*

Now let's examine the veracity of each of those statements, one by one. First of all, where are these Maserati "requirements" set forth? Were these requirements ever communicated to Stepan? If so, please tell me where and when and in what form? And if these requirements were not communicated to Stepan, then under what theory of law is he bound by them? Second, you state no invoice number on them. That's funny, in the upper right hand corner of the first page of each invoice, I see an item labeled 'Workfile ID:'. Is this not an invoice number? If not, what is it? Or is this another case of not fulfilling some Maserati requirement that we are not aware of? Third, you state there is no indication they were paid. Again, that's funny, I think I see on page two of each invoice the stamped legend "PAID." Do you see that? I suspect so. Fourth, you claim that there is no customer signature on each invoice. Well that is a stumper. A stumper in that I can't ever remember providing a mechanic with my signature to a customer invoice for an oil change. Typically, a customer may be asked to sign a statement that the mechanic can perform the required work, but asking a customer to sign an invoice is not something I am familiar with. I will be interested to listen to your expert testimony that such is the customary way that business is done. Finally, your last comment is that the customer provided the oil and OEM filter. True. And was there anything wrong with the oil and the OEM filter that Stepan provided? You don't say that. In fact, if you check the part numbers listed after each component, you will discover that they are genuine Maserati part numbers.

So, as I tally my scorecard for evaluating your objections to the receipts Stepan gave you, I have the following:

- No contractual basis for your claim that Stepan was required to submit detailed maintenance receipts;
- Two lies;
- One irrelevant statement about a non-existent course of business; and
- One accurate statement that shows Stepan provided authentic Maserati parts.

And for all of the above reasons, and only those reasons, Maserati declined to honor its warranty.

June 24, 2019

Legal Department
Maserati, USA

Page 4 of 5

But please don't get me wrong, none of the above paragraph matters, because none of it was a condition precedent to Maserati honoring the terms of its warranty. I get the distinct feeling that after Stepan purchased the lease for this $64,000 automobile, which lease came with your new car warranty, that Maserati wanted to make it difficult for Stepan to receive any benefit under that warranty. A warranty which had a cost bundled into the purchase price of the automobile. Why would Maserati want to treat Stepan like that? Why would any manufacturer of any item want to treat its customer that way?

The way I look at it, you and Herb Chambers constitute separate parties, engaging in a common conspiracy (sorry to use such a charged word), using the required instrumentalities, all for the purpose of disguising the failure of Herb Chambers to properly advise Stepan when he called to inform Herb Chambers about the symptoms of engine failure, namely the engine knock and the flashing check engine light. And those symptoms required immediate attention, but for some reason Herb Chambers failed to provide the service that was required. And then the two of you engaged in a concerted cover up designed to protect each of you from bearing the $37,000 expense of repairing Stepan's engine, which was damaged by the failure of Herb Chambers to promptly service it when Stepan told Herb Chambers of those conditions. And that concerted cover up consisted of inventing apocryphal terms that you insisted that Stepan had to comply with before he was entitled to receive benefits under his warranty. Yes, I think the facts fit the statute rather well. What do you think?

I have one other theory that I would like to run by you. I have always been interested in this line of thought, and I think this case I will give me a perfect opportunity to explore it. My theory is this. That by denying coverage to Stepan which it should provide pursuant to its warranty, Maserati USA is engaging in a form of insurance fraud. I am certain that when Stepan paid for his new Maserati via his lease, some consideration went to Maserati USA because of its generous warranty. And now I believe you are denying coverage under that warranty which you are obligated to provide. So, until you convince me otherwise, I think you are wrongfully denying Stepan certain benefits which he has paid for and to which he is entitled.

It is my belief that a warranty is a form of insurance. Except in a warranty all the payments are up front, bundled into the purchase price of the consumer good. And Massachusetts citizens are protected from insurance fraud pursuant to Massachusetts General Laws Chapter 176D.

An interesting coincidence about all of these statutes that I have discussed with you, namely Massachusetts General Laws Chapters 93A, 93B, and 176D, and RICO is that they all provide a plaintiff with treble damages and attorney's fees. I think the courts and law makers do not look very favorably on your actions.

Thus, there will be no resolution of Stepan's claims that does not compensate him for treble damages incurred (such as his monthly lease payments while the car is unusable, costs of

June 24, 2019

Legal Department
Maserati, USA

Page 5 of 5

---

alternative transportation, etc.) and for his legal fees.  I am encouraging you to quickly settle for
your benefit, so his damages are mitigated.

I look forward to hearing from you.

Thank you.

Sincerely yours,

Peter Kelman

Enc.
CC:    Giovanni Tosti (by first class mail)
       Stepan Petrosyan (via email)

**MOTOR VEHICLE PURCHASE CONTRACT**

DEAL# **6721**

BENTLEY BOSTON
539 BOSTON POST ROAD  WAYLAND, MA 01778
508-650-0020    FAX: 508-359-3576
www.bentleyboston.com

USE O

CUST# **6515**

| DATE | 12 NOV | 16 | ORDER NO. | STOCK NO. **0421** | SALESPERSON **OLUNIXON, WILLIAM** |
|------|--------|-----|-----------|---------------------|-----------------------------------|

PURCHASER NAME (s) (First) **STEPAN  PETROSYAN**

CITY/STATE/ZIP

BUSINESS PHONE

| ENTER MY ORDER FOR [ ] (QUANTITY) | **ONE** | NEW [X] USED [ ] | FORMER USE (IF APPLICABLE) | DEMONSTRATOR [ ] FORMER LEASED CAR [ ] | POLICE CAR [ ] FORMER DAILY RENTAL [ ] | REBUILT INSURANCE TOTAL [ ] TAXICAB [ ] |
|-----------------------------------|---------|------------------|----------------------------|----------------------------------------|----------------------------------------|------------------------------------------|

| Year **17** | Make **MASERATI** | Model Name **GHIBLI S** | Body Style/Type **SEDAN** | Model No. | Transmission Standard [ ]  Automatic [X] | (Speeds) | Cyl. **6** | Pass. **5** | Door **4** |
|---|---|---|---|---|---|---|---|---|---|

| Vehicle Identification No. **ZAM57RTA0H1218967** | Color 1st **BLACK** 2nd 3rd | Interior 1st **SABBIA** 2nd 3rd | Top | Odometer km. [ ] **24** | Approx. Delivery Da |
|---|---|---|---|---|---|

**TRADE IN**

| | Year | | Make | WARRANTY INFORMATION | | |
|---|---|---|---|---|---|---|

Model          Type          Color

This vehicle carries an express warranty. Purchaser may obtain a copy of such warranty from the dealer upon request at time of order and will receive the warranty at time of delivery.

V.I.N.

Odometer _____ (mi.) [ ] (km.) [ ]

E-mail Address **stephan87@hotmail.com**

Transmission [ ] Standard (Speeds) [ ] Auto

No. of Cyl. ____ Pass. ____ Doors ____

Price of Unit          $

Salvage Title [ ] Yes [ ] No

**PREVIOUS OWNER**

**REGISTRATION FEE/TITLE FEE**
**SALES TAX**

Additional Equipment/Items

City/State/Zip

Application for Title [ ]

**LIENHOLDER**

Application for Reg. [ ] New, [ ] Transfer

Address

Registration No.

City/State/Zip

Registration Fee  $ **50.00**

Acct. No. _____ Check No. _____

Title Fee  $ **75.00**

Balance Due $ _____

Mass Sales Tax  $ **N/A**

**TOTAL MONTHLY PAYMENT** **601.24**

**Additional Information-Vehicle Purchased**

LIENHOLDER **JP MORGAN CHASE BA**

**AMOUNT DUE AT START** **6471.66**

Address **P.O. BOX 901098**

**LEASE TERM** **39**

City/State/Zip **FORT WORTH TX 76101**

*Sales Tax amount is included in right hand column only when dealership check is issued in payment of Mass Sales Tax.

**ANNUAL EXPECTED MILES** **10000**

INSURANCE CO. **METROPOLITAN PROPE**

Agent/Branch **METLIFE**

Address/City **DAYTON      OH 45448-0002**

In the event I fail to take delivery of the vehicle purchased by me within forty-eight (48) hours after I have been notified by you that it is ready for delivery and pay the total contract price in the manner indicated, my deposit in the amount of $ _____ may, at your option, be retained by you to compensate you in whole or in part for any loss sustained by you. Your right to retain my deposit shall be in addition to and not instead of any other right or remedy provided by applicable law including, without limiting the generality of the foregoing, the sale of the car or truck I agree to purchase. If the amount of my deposit exceeds actual damages sustained by you, you will promptly refund the difference to me.

Purchaser's Initials [ ]

**Dealer Installed Accessories**

OTHER FEES (SEE LINE 9)

**MA STATE INSPECTION** **35.00**

**STATE REGS** **125.00**

ALL REBATES AND SALES INCENTIVES OFFERED BY THE MANUFACTURER OR DISTRIBUTOR ARE HEREBY ASSIGNED TO THE DEALER.

Purchaser's Initials [ ]

| | | | $ | |
|---|---|---|---|---|
| 1. Total Price | | | $ | **N/A** |
| 2. Discount | | | $ | **N/A** |
| 3. Trade-In Allowance | | | $ | |
| 4. Rebate(s) | | | $ | |
| | | | $ | **N/A** |
| 5. Trade Difference (line 1 minus lines 2, 3 & 4) | | | $ | |
| 6. Documentary Preparation | | | $ | **N/A** |

This contract is not binding upon either dealer or purchaser until the following conditions are met:
(1) The contract is signed by dealer or his/her authorized representative;
(2) Other: _____
(3) Other: _____

PURCHASER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND AT ANY TIME UNTIL S/HE RECEIVES A COPY OF THIS CONTRACT SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE. PURCHASER MUST GIVE WRITTEN NOTICE OF CANCELLATION TO THE DEALER.

| 7. Title Preparation | | | $ | **349.00** |
|---|---|---|---|---|
| 8. *Mass. Sales Tax ___ % of lines 5, 6 & 7 | | | $ | |
| 9. SEE ABOVE | | | $ | **160.00** |
| 10. TOTAL CONTRACT PRICE (Total of lines 5, 6, 7, 8 & 9) | | | $ | **N/A** |
| 11. Balance Due on Trade-In | | | $ | |
| 12. Subtotal (Total of lines 10 & 11) | | | $ | N/A |
| 13. Deposit | | | $ | |
| 14. Amount to be Financed | | | $ | |
| 15. Cash Due on Delivery | | | $ | |
| 16. TOTAL PAYMENT (Total of lines 13, 14 & 15) (line 16 must equal line 12) | | | $ | |

The front and back of this order comprise the entire agreement between the dealer and purchaser, and no other agreement or understanding has been made or entered into.

Purchaser's Signature

Co-Purchaser's Signature

Authorized Dealer Representative

FORM NO. MSADA-102-7714 Rev. 2/14

The Reynolds and Reynolds Company    TO ORDER www.reyrey.com  1-800-344-0426 (In) 1-800-63140
THIS PRINTED FORM IS NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Exhibit 16

**Frank A. Marinelli**
**Attorney at Law**
439 Washington Street
Braintree, Ma. 02184
Tel: 781-849-0400
Fax: 781-848-9927
Email: Fmarinellilaw@aol.com

Also admitted
In Rhode Island

August 8, 2019

BY FEDERAL EXPRESS and FAX:   781-207-7897

Peter Kelman
Attorney at Law
375 Totten Pond Road
Suite 102
Waltham, MA 02451-2010

Re:  Stepan Petrosyan,
2017 Maserati Ghibli S VIN ZAM57RTA0H1218967 (the "vehicle")

Dear Attorney Kelman:

Please be advised that this office represents the entity doing
business as Herb Chambers Maserati ("Chambers") of Wayland, MA
in connection with the allegations contained in your letter
dated July 10, 2019 (the "demand letter").

The demand letter's allegations of any cause of action against
Chambers are denied.  Chambers did nothing wrong and did not
perpetrate any knowing and/or intentional unfair and/or
deceptive act and/or practice.[1]

Approximately thirty-three (33) months ago, on November 12,
2016, your client leased at Chambers the new 2017 Maserati for a
period of thirty-nine (39) months ending on February 12, 2020.
Prior to leasing the new vehicle in 2016, Mr. Petrosyan
inspected the vehicle, test-drove it and/or was free to have an
expert of his choice inspect the vehicle.  The vehicle conformed
to the lease contract.  Atwood v. Best, 21 Mass. App. Ct. 70
(1985).  When Mr. Petrosyan took delivery of the vehicle in

---

[1]Chambers asserts that the demand letter does not comply with the requirements
of M.G.L. c. 93A.  Without limitation, as concerns Chambers, the demand
letter does not reasonably describe any unfair and/or deceptive act and/or
practice.  Any allegations concerning Chambers contained in other Attorney
Kelman letters dated June 18, 2019 and June 24, 2019, are also denied.

1

2016, the vehicle was fit for its ordinary purpose.  Walsh v. Atamian Motors, 10 Mass.App.Ct. 828 (1980).[2]

**From November 2016 through March 7, 2019, Mr. Petrosyan drove the vehicle 24,255 miles.**

From November 2016 through early March 2019 - or the entire 24,255 miles driven by your client - Chambers did not service the engine; Mr. Petrosyan did not bring the vehicle to Chambers for engine service or for any oil change(s) from November 2016 through early March 2019.[3]  On March 7, 2019, Mr. Petrosyan brought the vehicle to Chambers.  On March 7, 2019, without limitation, the check engine light was on, the low oil light was on and the engine was knocking.  As acknowledged (p. 2, demand letter) the vehicle's engine needed to be replaced.  A dispute ensued between Mr. Petrosyan and his representative Attorney Kelman, on the one hand, and the manufacturer of the vehicle, MNA, on the other hand, as to whether the cost of engine replacement would be covered under the manufacturer's [MNA] warranty.  Such a manufacturer's warranty dispute - whether the cost of engine replacement would be covered/paid under the MNA warranty - is a matter between MNA, the manufacturer, and Mr. Petrosyan.  Attorney Kelman stated (p. 2, demand letter) that "Maserati ultimately denied to cover the cost of replacing the engine under its warranty.  I [Attorney Kelman] have attached a redacted copy of that [Maserati] letter, once again, for novice eyeballs…"  Contrary to that assertion, a copy of said Maserati's (manufacturer's) letter to Mr. Petrosyan or his representative was not included with the demand letter sent to Chambers.  The demand letter (p. 2) asserts that MNA denied warranty coverage for a replacement engine due to inadequate maintenance receipts.  After leaving the vehicle at Chambers on March 7, 2019, and being provided with a loaner car by Chambers,

---

[2] In order for a consumer to prevail in an action for damages for breach of an implied warranty of merchantability under G.L. c. 106, Section 2-314, he/she must demonstrate that the commodity was not reasonably suitable for the ordinary uses for which goods of that kind and description are sold, Mead v. Coca Cola Bottling Co., 329 Mass. 440, 442 (1952), quoted with approval in Vincent v. Nicholas E. Tsiknas Co., 337 Mass 726, 729 (1958), and that such defect or breach existed at the time of sale and proximately caused the damaged complained of.  Harrod v. Edward E. Tower Co., 346 Mass. 532 (1963).  Benavides v. Stop & Shop, Inc., 346 Mass. 154, 156 (1963).  See Walsh v. Atamian Motors, 10 Mass.App.Ct. 828 (1980).  The 2017 Maserati was fit for its ordinary purpose when delivered to Mr. Petrosyan in November 2016, and was driven 24,255 miles as of March 7, 2019.

[3] On February 22, 2017, approximately three (3) months post-lease commencement (4,772 miles), Mr. Petrosyan brought the vehicle to Chambers for a software update.  Mr. Petrosyan declined an alignment and replacement of a front left tire, which had a "bubble" in it (RO 25053).

Mr. Petrosyan took a significant time to produce for MNA, the manufacturer, any documents relating to Mr. Petrosyan's alleged maintenance/service of the engine including any oil change for the period November 2016 through March 7, 2019.  Finally, during April 2019, Mr. Petrosyan produced two (2) "American Auto Collision" receipts concerning alleged oil changes on December 21, 2017 (11,205 miles) and January 2, 2019 (22,572 miles), each of which reference Mr. Petrosyan providing the oil and the filter to American Auto Collision.[4]  Any dispute about whether the cost of a replacement engine should be covered/paid under MNA's new car warranty is a manufacturer's warranty dispute between MNA and Mr. Petrosyan.  Please provide to this office a copy of all documents (including any emails and correspondence) relating to the complete course of dealing between the manufacturer/distributor of the vehicle, MNA, and Mr. Petrosyan and/or his representative(s).

Chambers never serviced or evaluated the vehicle's engine prior to Mr. Petrosyan appearing at Chambers on March 7, 2019, with a vehicle that had, without limitation, significant engine knocking, engine light on and low oil light on.[5]  Contrary to any allegation, Chambers did not cause the vehicle's need for an engine replacement.  The demand letter does not present any basis for any liability (and/or causation) of Chambers as relates to the vehicle's need for a replacement engine.[6]  The dispute is about whether MNA, manufacturer/distributor of the vehicle, or Mr. Petrosyan should be responsible for the cost of engine replacement – a matter between MNA and its representative(s) and Mr. Petrosyan and his representative(s).[7]

---

[4] Please produce to this office a copy of all maintenance/service records for the vehicle since Mr. Petrosyan took delivery of the vehicle in November 2016.

[5] On March 7, 2019, Mr. Petrosyan indicated that these matters just occurred. Without limitation, Chambers disputes assertions of the 1st paragraph, p. 2 of the demand letter [call(s) to "Herb Chambers" - no personnel identified]. Chambers did not tell Mr. Petrosyan to drive the vehicle with an engine light on, a low oil light on and/or knocking engine.  Chambers notes the absence of such assertion(s) in prior letter(s) dated June 18, 2019 and June 24, 2019. Mr. Tosti disputes characterization(s) contained in Attorney Kelman's letters concerning telephone calls that were made by Attorney Kelman to Mr. Tosti.

[6] The demand letter does not present any evidence (expert or otherwise) to support any allegation against Chambers as relates to the vehicle's need for a replacement engine.

[7] Contrary to the demand letter's assertions against Chambers, M.G.L. c. 90, sec. 7N ½ (5) provides: "Nothing in this section shall be construed as imposing any liability on an authorized dealer or creating any cause of action by a consumer against a dealer under the provisions of this section." G.L. c. 90, Sec. 7N ½ (10) states that where a manufacturer's warranty is in effect, the manufacturer shall hold the dealer harmless from and against all damages, liabilities, losses and reasonable expenses of suit, including

3

Aug 05 '19 04:20p        Marinelli Law Offices                      7818489927                    p.5

Concerning the demand letter's threat to file litigation against
Chambers (p. 1 and 3, demand letter), Chambers asserts, without
limitation, that there is no good ground to file a threatened
lawsuit against Chambers.  Chambers will, without limitation,
defend against any such threatened lawsuit if filed against
Chambers.

Chambers reserves all rights including the right to supplement
or modify this response at any time.[8]

Thank you for your attention to this matter.

Very truly yours,

Frank A. Marinelli

---

reasonable attorneys' fees arising out of or incurred by the dealer by its
compliance with the provisions of this section if such manufacturer, having
been notified in writing by the dealer that such rights have been asserted by
a consumer, fails to resolve the same at its own expense in or within seven
business days.

[8] Substantive liability under the Massachusetts consumer protection statute
requires a showing of conduct that (1) falls within the penumbra of some
common-law, statutory or other established concept of unfairness; (2) is
immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial
injury to consumers or other business persons.  McDermott v. Marcus, Errico,
Emmer & Brooks, P.C., D. Mass 2012, 911 F. Supp. 2d 1.  There was no such
conduct concerning Chambers' limited course of dealing with Mr. Petrosyan and
the vehicle's need for a replacement engine.

4