UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPAN PETROSYAN, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 19-cv-12425-DJC |
| MASERATI NORTH AMERICA, INC. and HERB CHAMBERS OF WAYLAND, INC., | ) ) ) ) ) |
| Defendants. | ) ) ) ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                              **May 1, 2020**

**I.  Introduction**

Plaintiff Stepan Petrosyan ("Petrosyan") has filed this lawsuit against Defendants Maserati North America, Inc. ("Maserati NA") and Herb Chambers of Wayland, Inc. ("Herb Chambers") (collectively, "Defendants") alleging negligence, breach of contract, violations of Massachusetts consumer protection laws under Mass. Gen. L. c. 93B ("Chapter 93B"), 176D (Chapter 176D") and 93A ("Chapter 93A") and violations of the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  D. 1-1.  Herb Chambers moves to dismiss all claims against it, D. 6, and Maserati NA moves to dismiss all claims except the breach of contract claim against it.  For the reasons stated below, the Court ALLOWS both motions.  D. 5; D. 6.

**II.     Standard of Review**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

**III.    Factual Background**

Unless otherwise indicated, this summary is based on the allegations in the complaint and documents attached and incorporated thereto, D. 1-1, which are presumed to be true for the purposes of resolving the motions to dismiss.

On or around November 12, 2016, Petrosyan leased a new Maserati automobile (the "Maserati") from Herb Chambers pursuant to the Closed-End Motor Vehicle Lease Agreement ("the Lease Agreement"). D. 1-1 ¶ 10; D. 1-1 at 33. On the same day, Petrosyan executed a Motor Vehicle Purchase contract for the Maserati ("the Purchase Contract"), D. 1-1 at 34, even though Petrosyan did not in fact purchase the Maserati, D. 1-1 ¶ 11. Pursuant to the Lease Agreement, Petrosyan agreed to "maintain, service and repair" the vehicle as recommended in the owner's manual. D. 1-1 ¶ 13. Petrosyan kept up with vehicle maintenance, service and repair in accordance

with the recommendations in the reference guide and had two oil changes done during his lease period: one in December 2017 and one in January 2019. D. 1-1 ¶¶ 16-19. On average, Petrosyan drove the Maserati fewer than 1,000 miles a month. D. 1-1 ¶ 14.

On February 25, 2019, Petrosyan contacted Herb Chambers to schedule a service appointment for recall work and to inquire about the check engine light which began flickering two days earlier. D. 1-1 ¶¶ 20-21. A Herb Chambers service representative advised Petrosyan that since the check engine light was not constant, the need was not urgent and Petrosyan scheduled a service appointment for March 7, 2019. D. 1-1 ¶¶ 22-23. Three days later and before his March 7th appointment, Petrosyan noticed a clunking sound from the car's engine and called Herb Chambers, that reassured him that the condition was not uncommon in Maserati vehicles and could be addressed at the March 7th appointment. D. 1-1 ¶¶ 24-25.

On March 7, 2019, as scheduled, Petrosyan left the Maserati at Herb Chambers and received a loaner car. D. 1-1 ¶¶ 26-27. Five days later, a Herb Chambers service manager contacted Petrosyan and informed him that the Maserati would require a new engine. D. 1-1 ¶ 28. Petrosyan asked the service manager what was wrong with the engine, but the service manager did not answer. D. 1-1 ¶ 29. The Herb Chambers manager told Petrosyan that the replacement engine would be covered by the Maserati NA new car warranty and that Herb Chambers would be his advocate in dealing with Maserati NA. D. 1-1 ¶¶ 30-31. Petrosyan assented to Herb Chambers advocating on his behalf and, therefore, had no contact with Maserati NA in the course of communications regarding the engine replacement. D. 1-1 ¶ 33. Herb Chambers informed Petrosyan that Maserati NA wanted to see his maintenance records and Petrosyan complied with this request. D. 1-1 ¶ 34. After receiving the maintenance records, Herb Chambers informed Petrosyan that the records did not comply with Maserati NA's requirements that maintenance

receipts be typed. D. 1-1 ¶ 35. Petrosyan obtained typed copies of his maintenance records and delivered them to Herb Chambers. D. 1-1 ¶¶ 36-37. On April 17, 2019, Herb Chambers informed Petrosyan that Maserati NA would not cover the cost of the engine replacement. D. 1-1 ¶ 38. That same day, Petrosyan returned the loaner car to Herb Chambers and had the Maserati towed to his home in Waltham, Massachusetts where it has remained undriven since then. D. 1-1 ¶ 39. When Petrosyan retrieved his Maserati, Herb Chambers gave him an invoice which included the following entry:

> Engine knocking and low oil pressure light on. Checked oil level, oil is full. Scanned for codes, found oil pressure low code. Vehicle was driven to dealer even with the low pressure warning light on. . . . There is a clear knocking noise coming from the oil sump area. Oil does not look to have and [sic] fuel or metal in it . . . Maserati requested invoices from owner for services done. Attached invoices that were provided as well as receipts that were provided to service. Warranty response from Maserati as follows, "Attached maintenance receipts are not valid per Maserati requirements. No invoice number on them, no customer signature, and no indication that they were paid. The invoice also states that the customer provided the oil and the OEM filter." Advised client no warranty repairs available at this time.

D. 1-1 at 46.

On April 22, 2019, a Herb Chambers service representative informed Petrosyan that the cost to replace the Maserati engine would be $28,703.09. D. 1-1 ¶ 40. Petrosyan has continued to make monthly lease payments and has otherwise fulfilled his financial obligations under the lease. D. 1-1 ¶ 61. As of the date of the complaint, Petrosyan has spent $8,434 for ongoing expenses to maintain his lease and his financial obligations as lessee. D. 1-1 ¶ 61. Petrosyan retained counsel and, in an attempt to settle this dispute, Petrosyan sent a July 10, 2019 demand letter to both parties narrating the factual basis for his claims and requesting response within thirty days. D. 1-1 ¶ 63.

**IV.     Procedural History**

Plaintiff instituted this action in Middlesex Superior Court on October 21, 2019, D. 1-1, and, on November 27, 2019, Maserati removed the case to this Court, D. 1. Maserati has now moved to dismiss all but one of the claims, D. 5, and Herb Chambers has moved to dismiss all of the claims against it. D. 6. The Court heard the parties on the pending motions and took these matters under advisement. D. 24.

**V.      Discussion**

As both Defendants move to dismiss the Chapter 93B and RICO claims on the same basis, the Court's analysis begins with these claims.[1]

    **A.     Claims Brought Against Maserati NA and Herb Chambers**

          *1.      Violation of Chapter 93B (Counts III and IV)*

Both Maserati NA and Herb Chambers move to dismiss Petrosyan's Chapter 93B claim against them. D. 5-2 at 6-7; D. 7 at 6-7. Chapter 93B regulates business practices between motor vehicle manufacturers, distributors and dealers. See Mass. Gen. L. c. 93B. "Chapter 93B is aimed primarily at protecting motor vehicle dealers from injury caused by the unfair business practices of manufacturers and distributors with which they are associated, generally in a franchise

---

[1] Petrosyan maintains that this Court should not entertain Maserati NA's motion to dismiss because, Petrosyan argues, Maserati NA counsel did not comply with Local Rule 5.2 and 7.1. D. 13 at 2-4. Specifically, Petrosyan argues that Maserati NA did not confer in good faith as required under Local Rule 7.1. D. 13 at 2. Local Rule 7.1(a)(2) makes clear that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." Maserati NA counsel has filed a local Rule 7.1 certification, D. 5 at 4-5, and attached an email chain indicating an attempt to confer. D. 5-1. It appears that although Maserati NA's counsel gave a short timeline to do so, Maserati NA's counsel was willing to extend any discussion provided Petrosyan stipulate to an extension for filing the motion. D. 5-1 at 1. The Court cannot say that such an effort constitutes non-compliance with Local Rule 7.1. Petrosyan further argues that Maserati NA's service was defective in violation of Local Rule 5.2, D. 13 at 2-4, but appears to cite an old version of the local rule in support of his argument and it does not appear that Maserati NA's filings are in noncompliance with the current Local Rules.

relationship." Mass. State Auto Dealers Assoc., Inc. v. Tesla Motors MA, Inc., 469 Mass 675, 676 (2014). Maserati NA and Herb Chambers argue that Petrosyan's Chapter 93B claims must be dismissed because Petrosyan is an individual, and not a motor vehicle dealer, and, therefore, lacks standing to sue under this chapter. D. 5-2 at 6-7; D. 7 at 6-7.

Petrosyan argues that the plain language of the statute creates a private cause of action. D. 11 at 6-7; D. 13 5-6. Specifically, Petrosyan points to § 4 of Chapter 93B which provides that "it shall be a violation of subsection (a) of [§] 3 for any manufacturer, distributor, franchisor representative or motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage . . . to the public," Mass. Gen. L. c. 93B § 4(a), and asserts that because the section makes it illegal to participate in any action which is arbitrary, in bad faith, or unconscionable and that causes damage "to the public," the law creates a private cause of action. D. 11 at 6-7; D. 13 at 5-6.

Although this provision contemplates that the public can suffer an injury as a result of violations of the statute, it does not create a private cause of action under the statute. Rather, § 18 of Chapter 93B titled "Rights and Remedies" provides that "[a]ll rights and remedies accorded motor vehicle dealers under this chapter shall apply with equal force and effect to a distributor in its dealings with the manufacturer from which it purchases new motor vehicles," Mass. Gen. L. c. 93B § 18, and, therefore, contemplates that only motor vehicle dealers and distributors have a cause of action under Chapter 93B.

Further, the Supreme Judicial Court has acknowledged that, in the context of Chapter 98B, "not every party who can claim an injury as a result of violations of a statute or regulation has standing to bring an action thereunder." Beard Motors, Inc. v. Toyota Motor Distribs., Inc., 395 Mass. 428, 431 (1985). Instead, it explained, "[t]he scope of the grant of authority to bring an

action for violation of [Chapter 93B], must be determined with reference to the context and subject matter of the statute." Id.  The purpose of Chapter 93B is to protect motor vehicle dealers from injury caused by the unfair business practice of manufacturers and distributors with which they are associated.  See Mass. State Auto. Dealers Assoc., Inc., 469 Mass. at 676.  In keeping with this purpose, courts have declined to provide a private right of action outside of motor vehicle dealers and distributors who are in privity with manufacturers and distributors.  See Boyle v. Int'l Truck and Engine Corp., 369 F.3d 9, 14 (1st Cir. 2004) (explaining that "only dealers, and not prospective dealers, have standing to sue under Chapter 93B").  Although Petrosyan asserts that caselaw supports his position that members of the public can bring a claim under Chapter 93B, he does not cite, nor can this Court find, any case where a customer like Petrosyan had standing to bring a claim under that chapter.  Accordingly, Petrosyan's Chapter 93B claims are DISMISSED.

        2.    RICO

Petrosyan asserts civil claims against the Maserati NA and Herb Chambers for violations of RICO pursuant to 18 U.S.C. § 1962(c).  RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]." 18 U.S.C. § 1962(d).  To succeed in a civil RICO action, plaintiffs must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co. Inc., 473 U.S. 479, 496 (1985) (citations omitted).  Moreover, "if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails." Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 21 (1st Cir. 2000).

     a)  <u>Racketeering Activity</u>

  Predicate acts under the statute include federal mail fraud under 18 U.S.C. § 1341, federal wire fraud under 18 U.S.C. § 1343, "any act or threat involving . . . kidnapping, . . .bribery [or] extortion. . . which is chargeable under State law and punishable by imprisonment for more than one year" as well as the bribery of public officials under 18 U.S.C. § 201. <u>See</u> 18 U.S.C. § 1961(1). Petrosyan does not allege any of these or other enumerated predicate acts. Instead, he alleges generally that Herb Chambers and Maserati NA "agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Mr. Petrosyan by conspiring to concoct a story whereby neither Defendant would be liable to Mr. Petrosyan for the damage that Mr. Petrosyan's Maserati suffered as a result of the acts of the Defendants." D. 1-1 ¶ 95. Petrosyan, however, does not allege what the racketeering activity allegedly was and he only further alleges that the Defendants "committed multiple related acts of conspiring to create a story whereby neither Defendant would be accountable to Mr. Petrosyan." D. 1-1 ¶ 96. In his response to the motions to dismiss, Petrosyan asserts that he has alleged racketeering activity because he alleges that Maserati NA and Herb Chambers engaged in a scheme of mail and wire fraud to "defraud [Petrosyan] with respect to the diagnosis of his engine failure and with respect to the applicability of [Maserati NA's] warranty to cover the cost of replacement of his car's engine," D. 12 at 17, but the bare allegations in the complaint do not suffice to support this theory.

  To state a claim of wire or mail fraud "the plaintiffs must allege with particularity: 1) a scheme to defraud by means of false pretenses, 2) the defendant's knowing and willful participation in the scheme with the intent to defraud, and 3) the use of interstate wire communications [or interstate mail] in furtherance of a fraudulent scheme." <u>Sebago, Inc. v.</u>

Beazer E., Inc., 18 F. Supp. 2d 70, 80 (D. Mass. 1998).  It is "well settled law in this circuit that RICO pleadings of mail and wire fraud must satisfy the particularity requirements of Rule 9(b)." Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); See New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987).  Petrosyan's allegations do not meet this standard.

Petrosyan alleges that Herb Chambers and Maserati NA "agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Mr. Petrosyan by conspiring to concoct a story whereby neither Defendant would be liable to Mr. Petrosyan for the damage that Mr. Petrosyan's Maserati suffered as a result of the acts of the Defendants."  D. 1-1 ¶ 95.  Petrosyan further alleges that the Defendants "committed multiple related acts of conspiring to create a story whereby neither Defendant would be accountable to Mr. Petrosyan."  D. 1-1 ¶ 96.  These allegations do not satisfy rule 9(b)'s particularity requirement in that they do not state the time, place or manner of the "multiple related acts" of allegedly racketeering activities.  Laverty v. Massad, No. 08-CV-40126-FDS, 2009 WL 10730424, at *7 (D. Mass. June 23, 2009) (dismissing RICO claims where the plaintiff did not describe "any actual racketeering activity in which any of these defendants allegedly engaged").

Petrosyan argues that he has satisfied the pleading requirement by pointing to specific emails, that he asserts support the allegations of mail or wire fraud.  D. 12 at 17.  Specifically, Petrosyan argues that ¶¶ 31-40 of the complaint plead specific instances of mail fraud.  D. 12 at 17.  These paragraphs allege no acts on the part of Maserati NA.  Rather, they identify several instances in which a Herb Chambers employee communicated with Petrosyan regarding his

9

Maserati. D. 1-1 ¶¶ 31-40. Petrosyan, moreover, does not identify precisely which statements amount to alleged misrepresentations and how these representations amount to a "scheme" with the intent to defraud. Cf. Sebago, Inc., 18 F. Supp. 2d at 80 (finding that a plaintiff had alleged mail fraud to support a RICO claim where they alleged that the defendant "knowingly and with an intent to defraud, mailed allegedly fraudulent brochures and other documents on over 50 occasions").

                        b)        <u>Pattern</u>

Even assuming these communications constituted mail fraud by Herb Chambers, Petrosyan does not allege the requisite pattern. To satisfy RICO's pattern requirement Petrosyan must allege "at least two acts of racketeering activity . . . [occurring] within ten years of each other . . . ." Giuliano v. Fulton, 399 F.3d 381, 386 (1st Cir. 2005). The pattern element also requires that the two racketeering predicates be "related and that amount to, or pose a threat of continued criminal activity," H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 229 (1989), known as the "continuity plus relationship" standard. Efron, 223 F.3d at 15. Petrosyan's complaint does not meet this standard.

Petrosyan alleges that Herb Chambers engaged in multiple communications misrepresenting the pertinent facts of the warranty, but these communications, at best, were part of a "single effort to" allegedly defraud Petrosyan. See Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992). A single effort, even when made up of multiple communications, actions or behaviors does not constitute a pattern sufficient to plead a RICO violation. ZyXEL Commc'ns, Inc. v. Skyworks Sols., Inc., No. 19-cv-11573-RGS, 2019 WL 6726398, at *3 (D. Mass. Dec. 11, 2019) (collecting cases and explaining that "[t]he teaching of these cases 'firmly rejects' RICO liability in . . . the context of closed continuity 'where the alleged racketeering acts,

taken together, comprise a single effort to facilitate a single financial endeavor'") (quoting Home Orthopedics Corp. v. Rodriguez, 781 F.3d 521, 530 (1st Cir. 2015)).  There are no allegations of additional racketeering activity within a ten-year period that might constitute a pattern, much less any allegations to satisfy the "continuity plus relationship" between activities to suggest that there is a continued threat of criminal activity.

        c)        Enterprise

Even assuming that Petrosyan alleged a pattern of racketeering activity, his claims against Maserati NA and Herb Chambers fail because he has not alleged an enterprise.  An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  There are "two types of enterprises:  legal entities and associations-in-fact." Libertad v. Welch, 53 F.3d 428, 441 (1st Cir. 1995).  The enterprise is an "entity, a group of persons associated for a common purpose of engaging in a course of conduct." Id.  It must be distinct from the underlying activity. Id. at 442 (explaining that an "enterprise must be an entity separate from the named defendants who are allegedly engaging in unlawful activity").  "As a matter of law, it is not sufficient that several organized, ongoing groups come together for one concerted action, unless those groups can also be shown to constitute a larger unit, over and above their separate structures and operations." Id.  Here, given the absence of any factual allegations, Petrosyan has not alleged that Herb Chambers and Maserati NA constitute an enterprise.  There are no allegations here of systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination for a common goal, as might support a theory of enterprise. Cf. Jim Forno's Cont'l Motors, Inc. v. Subaru Distrib. Corp., 649 F. Supp. 746, 750 (N.D.N.Y. 1986) (holding that the plaintiff had alleged enterprise because they alleged the "common goal of submitting false reports

to boost both [the manufacture's] and the dealers allocation of vehicles"). The RICO claim against Herb Chambers and Maserati NA is DISMISSED.

### B. The Remaining Claim Maserati NA Moves to Dismiss: Chapter 176D (Count VI)

Mass. Gen. L. c. 176D concerns unfair methods of competition and unfair and deceptive acts and practices in the business of insurance. Mass. Gen. L. c. 176D. Specifically, the Act prohibits persons from "engag[ing] in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to section six of this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Mass. Gen. L. c. 176D, § 2. Maserati NA moves to dismiss the Chapter 176D claim against it because it asserts it is not in the business of insurance and, therefore, cannot have violated Mass. Gen. L. c. 176D, § 2. D. 5-2 at 7-9. Chapter "176D contains no provision for a private right of action" and, therefore, violations of 176D should be brought under Chapter 93A. Liquor Liab. Joint Underwriting Assoc. of Mass. v. Great Am. Ins. Co., Nos. 96-3127, 96-4675, 2003 WL 21048793, at *22 (Mass. Sup. Ct. 2003). Here, Petrosyan's claims were brought only under Chapter 176D, but in any event fail because Chapter 176D applies to those in the business of insurance and Maserati NA is not in the business of insurance.

The purpose of Chapter 176D is to "discourage insurers from forcing claimants into unnecessary litigation to obtain relief" that is contractually owed to them, Morrison v. Toys "R" Us, Inc., 441 Mass. 451, 454 (2004), and, therefore, only applies to those in the business of insurance. The business of insurance "involves 'profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices.'" See Morrison, 441 Mass. at 455 (quoting Poznik v. Mass. Med. Prof'l Ins. Assoc., 417 Mass. 48, 51 (1994)). There is no indication that Maserati NA makes "profit driven business decisions about premiums,

commissions, marketing, reserves and settlement policies and practices." Poznik, 417 Mass. at 51. Instead, Maserati NA is a "manufacturer of luxury automobiles." D. 1-1 ¶ 9.

Nonetheless, Petrosyan argues that Maserati NA is in the business of insurance because it has a written limited warranty which, Petrosyan argues is an insurance policy within the meaning of Chapter 176D. D. 13 at 12-13. Whether a company is contractually obligated to pay may be a relevant factor to consider in determining whether a claim is covered under Chapter 176D, see Morrison, 441 Mass. at 455, but Petrosyan's argument invites this Court to expand Chapter 176D to cover every company that sold its products with a warranty. The Supreme Judicial Court, however, has reject an expansion of Chapter 176D "as a blanket guarantee to consumers that claims against companies with which they do business, even claims in which liability is clear, will be settled before going to court." See Morrison, 441 Mass. at 455-57 (holding further that "[t]he concerns underlying the enactment of [Chapter] 176D . . . cannot legitimately be extended to a self-insurer such as Toys, which had no contractual obligation to settle the plaintiff's claim and is not otherwise regulated by the Commonwealth for insurance activities"). Here, without indication that Maserati NA is in any business besides that of manufacturing luxury automobiles, Petrosyan's Chapter 176D claim against Maserati NA should be dismissed.

    **C.    The Remaining Claims Against Herb Chambers**

        *1.    Violation of Chapter 93A (Count VI)*

Herb Chambers moves to dismiss Petrosyan's Chapter 93A claim against it. D. 7 at 8-11. "Chapter 93A, commonly known as the Massachusetts Consumer Protection Act, is a broad consumer protection statute that provides a private cause of action for a consumer who 'has been injured,' by 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017) (quoting Mass. Gen. L. c. 93A §§ 9(a),

2(a)) (internal citations omitted); see Casavant v. Norwegian Cruise Line, Ltd., 460 Mass. 500, 503 (2011).  Herb Chambers disputes that Petrosyan has alleged an unfair or deceptive act or practice within the meaning of Chapter 93A.  D. 7 at 8-11.

"[A] practice or act will be unfair under [Chapter 93A] if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.'"  Incase v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Morrison, 441 Mass. at 457).  "Which acts will be considered 'deceptive' is less clearly defined in the case law . . . [but] some cases have held that an act or practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'"  Id. (quoting Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980)).

Petrosyan identifies several factual bases he alleges underlie his Chapter 93A claim, D. 12 at 12, none of which state a Chapter 93A claim.  First, Petrosyan points to the allegation that Herb Chambers had him execute both the Lease Agreement and the Purchase Agreement.  D. 12 at 12.  This allegation alone cannot sustain a Chapter 93A claim because Petrosyan has not identified any damage he has suffered as a result of executing two agreements.  See Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288, 304 (D. Mass. 2009) (explaining that it is "necessary for a private plaintiff to show that the defendants' deceptive act caused some form of compensable loss").

Petrosyan's following allegations to support his Chapter 93A claim are, in essence, that Herb Chambers retained his car for five weeks without making any repairs while representing to him that they intended to advocate on his behalf to Maserati NA in the process of negotiating whether Petrosyan's engine would be covered under the Maserati NA warranty.  D. 1-1 ¶¶ 26, 30, 31-40.  These allegations do not sustain a claim under Chapter 93A.  There is no allegation that

Petrosyan instructed them to make repairs and indeed doing so without authorization and then charging Petrosyan for the repairs while holding the vehicle might itself amount to an unfair practice.  Nor does Petrosyan allege that Herb Chambers charged storage fees without notifying him.  Murchison v. Father & Sons, Inc., 1994 Mass. App. Div. 179 (Dist. Ct. 1994) (affirming a finding that it was an unfair and deceptive practice for the repair shop to seek storage charges without notifying plaintiff).  Rather, Petrosyan alleges that Herb Chambers retained the car for five weeks without performing repairs while negotiating with Maserati NA on Petrosyan's behalf without charging Petrosyan for storage costs and providing him with a loner car for the duration of Herb Chambers' retention of the car.  These allegations, alone and without allegations that Petrosyan requested his car be returned, do not amount to an unfair and deceptive practice.  Atwood v. Best Buick, Inc., 21 Mass. App. Ct. 70, 73 (1985) (explaining that a reasonable course of conduct of an automobile dealer does not give rise to a Chapter 93A claim).

       Without citation, Petrosyan argues that Herb Chambers' collective conduct—encouraging Petrosyan to execute a Lease Agreement and a Purchase Contract, keeping Petrosyan's car for five weeks and performing little maintenance or service, failing to offer a diagnosis for the engine failure, advocating to Maserati NA on behalf of Petrosyan and refusing to discuss settlement in response to Petrosyan's 93A demand letter—taken together, plausibly narrate a claim for relief under Chapter 93A.  This Court's review of the caselaw finds this argument unavailing.  Without citation to support Petrosyan's argument, the Court cannot conclude that this behavior amounts to an unfair and deceptive practice under Chapter 93A.

       Finally, Petrosyan alleges that Herb Chambers misrepresented "the terms of the warranty covering repairs to Mr. Petrosyan's car."  D. 1-1 ¶ 87.  To the extent this argument relies upon negligent misrepresentation as the basis of a Chapter 93A claim, it does not state a claim on its

own. O'Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 216 (2008) (observing that "a negligent act standing by itself does not give rise to a claim under [Chapter] 93A"). To the extent this claim relies on a theory of fraudulent misrepresentation, Petrosyan was required to allege the circumstances surrounding the alleged misrepresentation with particularity. See O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 450 (D. Mass. 2018) (explaining that the Rule 9(b) requirement "means that a complaint must specify the 'time, place, and content of an alleged false representation,' including misrepresentations forming the basis of a Chapter 93A claim"); Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 21 (1st Cir. 2017). As none of the alleged misrepresentations are pled with particularity and Petrosyan has otherwise failed to state a claim, his Chapter 93A claim against Herb Chambers is DISMISSED.

    2.  *Negligence (Count I)*

Under Massachusetts law, a plaintiff must prove that (1) he or she is owed a legal duty by the defendant; (2) there was a breach of that duty; (3) actual damage or injury occurred; and (4) there is causation between the breach and the damage. Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). Herb Chambers argues that Petrosyan's negligence claim must be dismissed because it is based on only conclusory allegations and otherwise fails to satisfy the elements for breach and causation. D. 7 at 6.

It appears from Petrosyan's opposition and a letter sent to Herb Chambers on June 24, 2019, D. 1-1 at 60-64, that his negligence claim relies upon the basis that Herb Chambers mechanics were negligent in their instruction to continue driving the Maserati until the March 7th service appointment, D. 1-1 at 63. "Actionable negligence only exists in the context of a legal duty of care owed from one party to another." Bernier v. Smitty's Sports Pub, Inc., 90 Mass. App. Ct. 472, 473 (2016). Although this Court construes the complaint in favor of Petrosyan, he has

not alleged any duty, breach of duty or causation in association with the alleged negligence. Instead, Petrosyan's complaint alleges that "Herb Chambers owed a duty of care to Mr. Petrosyan to service his Maserati in a professional, workmanlike manner" and "Herb Chambers failed to perform professional and workmanlike services on Mr. Petrosyan's Maserati . . . and thereby breached its duty of care owed to Mr. Petrosyan."  D. 1-1 ¶ 68-69.  As Herb Chambers points out, Petrosyan alleges that Herb Chambers did not do any work on his Maserati and therefore cannot have been negligent in the work that was not done.

Petrosyan asserts in response that his claim of negligence is "so plain and so obvious that it is within the ken of the average person to understand Chamber's nonperformance to a reasonable standard" and, therefore, and expert is not required.  D. 12 at 5.  Assuming the non-necessity of an expert, this fact does not extricate Petrosyan of his duty to develop argument in support of his claims/position with citation to relevant legal authority to this Court.  "Actionable negligence does not and cannot exist in the abstract."  Bernier, 90 Mass. App. Ct. at 474.  Without a formulation of Herb Chambers' alleged duty, Plaintiffs have not stated a claim.  See Hale v. Pan Am Ry., Inc., 305 F. Supp. 3d 252, 256-57 (D. Mass. 2018) (dismissing negligence claim because the plaintiff did not plausibly allege duty or make clear how any duty of reasonable care was breached); Lovern v. Astrue, No. 09-cv-40098-TSH, 2011 WL 4621455, at *6 (D. Mass. Sept. 29, 2011) (recognizing that "it is the parties['] burden, not the [Court's], to develop arguments in support of their claims/positions, with citation to relevant legal authority"); see also Shaner v. Chase Bank USA N.A., 587 F.3d 488, 494 (1st Cir. 2009) (stating "[i]t is not our job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief"), accordingly, Petrosyan's negligence claim is DISMISSED.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss. D. 5; D. 6. The only claim remaining is Petrosyan's breach of contract claim against Maserati NA (Count II).

**So Ordered.**

/s/ Denise J. Casper
United States District Judge